EASON *v.* EAST TENNESSEE, V. & G. RY. CO.

*(Circuit Court of Appeals, Fifth Circuit.* June 13, 1892

No. 24.

RAILROAD COMPANIES—NEGLIGENCE—CHILD ON TRACK—INSTRUCTIONS.

In an action by a mother against a railroad company, under Laws Ga. 1887, p. 44, for the killing of her minor child, plaintiff's evidence was that, when near the track, the child was caught up by a slowly moving switching train, and carried a long distance, while the operators of the train looked on without attempting to render assistance or to stop, which might easily have been done. Defendant's evidence was that the child ran upon the track without warning, and was struck before the train could be stopped, though this was done as soon as possible. These theories were pressed by the respective counsel, and the law applicable thereto explained by them. The court, after explaining the general principles of law as to negligence and contributory negligence, stated these conflicting theories to the jury, and said that, if defendant's view of the case were true, it would not be liable, but, on plaintiff's theory, it would be necessary for the jury to believe that knowledge of the boy's perilous position was brought home to the train employes, or that the warning was such that they could have known the same, and could have stopped the train, and saved the boy's life, in which case the company would be liable. *Held*, that this charge was sufficient, and it was not error to refuse charges requested by plaintiff. stating what was wanton and reckless conduct, and that the same would render the company liable, notwithstanding prior contributory negligence by the child or its mother.

In Error to the Circuit Court of the United States for the Northern District of Georgia.

Action by Lula Eason against the East Tennessee, Virginia & Georgia Railway Company for the killing of a minor child. Verdict and judgment for defendant. Plaintiff brings error. Affirmed.

*Alex. C. King*, for plaintiff in error.

*Albert Howell, Jr.*, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. This was an action to recover damages for the negligent homicide of plaintiff's minor child, under the Georgia statute of 1887, which provides that—

"A mother, or, if no mother, a father, may recover for the homicide of a child, minor or *sui juris*, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child." See Laws Ga. 1887, p. 44.

The plaintiff proved the statutory conditions essential to maintain the action, such as contribution to support and partial dependence, about which there is no dispute. The case went to trial on the merits. Plaintiff's evidence tended to show the following:

"The deceased child was eight years old. His mother, the plaintiff, was a laundress in Atlanta, and the child, besides contributing to the mother's support by assisting in that business at home, was sent at times to collect money. On the day of his killing he was sent to collect money on Peachtree street, in Atlanta, a point which lay beyond defendant's tracks. There was a safe passage on his route by Magnolia or Foundry streets, under defendant's tracks, and the mother had (as she testified) bidden the child not to go on the railroad track. On said day, instead of going directly on the errand, the child went on the high embankment of defendant's railroad above the streets, which passed under the railroad, and played there with other children, with whom he was in the habit of playing there. The child was playing at Magnolia street trestle. A switch engine of defendant, pushing in front three box cars and pulling behind five or six other cars, came in the direction of the children, running at a speed of four or five miles an hour. Two men stood on the front cars. The deceased child crossed in front of the train, was knocked down, and caught up alive by the break beam or rod, or some of the projecting iron in front of the car. He was caught in the clothes, and his body lifted and suspended above the track. In this manner he was carried, alive and screaming, 'Oh, Lordy! Oh Lordy!' for one block, or the distance of three hundred and eighty (380) feet. During this time the engineer and crew of the train made no effort to stop it. The train ran so slowly that a person could readily get on and off it, and it could have been stopped at this point at from one to three car lengths, or from 34 to 102 feet. The companions of the child ran alongside of the train, screaming all the way. They shouted, 'Stop that train, or you will kill a boy,' and, 'You have caught a boy under that car.' One of the crew, standing on the car, looked down at the children and laughed. The engineer looked out at them, and said, 'I don't care; some of them ought to be killed.' Citizens standing across an adjacent street heard cries of, 'Oh, Lordy! Oh, Lordy!' and other cries. After rolling 380 feet to Foundry street trestle, the boy's clothes and hold broke, he fell across the rail, was rolled over, mangled, and killed. The engine passed over his body, and the engineer looked down and uttered an oath.

"The defendant's evidence directly contradicted the plaintiff's, and tended to show that the child stepped on the track without any warning, and was

immediately run over and killed. That the children were not at Magnolia but at Foundry street trestle. That there were no cries before the boy was run over, but after he was killed the other children screamed and holloaed and ran off the embankment. That the child was not caught up and carried, was not seen on the track, and that, if there had been cries before the boy was killed, the train crew would have heard them. That the place was no crossing. That there was a lookout on the end of the car in direction of the child. That this child had been in the habit of picking up coal on the tracks at this point, and had once before been carried to its mother by the railroad employes. The mother was in the habit of sending him there for the purpose of gathering coal and chips. That the engineer did not use the language attributed to him. That the train was stopped as soon as possible after striking the child. The road had used every effort to keep these children, including this boy, off the track at this place. That the day before, this boy got on the track before the engine, and forced it to stop and the fireman to get off and run him off, and, as soon as he returned to the engine, the boy went back, and placed his sack of coal on the track before the engine."

On the case thus presented, the trial judge charged the jury as follows:

"This is a suit brought by the mother of a child to recover the value of his life, under a recent act of the legislature of Georgia. In order for the mother to recover at all in this case, it would be necessary to show that the child contributed to her support, and that she was substantially dependent upon such child, in part, for support. It would be immaterial if the proof shows that she was likewise dependent upon her own labor for support. The inquiry is, you perceive,—and I read you the language of the supreme court of this state construing the act under which this action is brought,—that 'the child must contribute to her support, and the proof must show that she was substantially dependent upon such child, in part, for support.' If this fact exists, and if she is entitled to recover at all, after I have given you some principles of law which control the case, she is entitled to recover for the life of the child without any deduction therefrom for the expenses of the child through life. 'The full value of the life of the deceased, as shown by the evidence, shall be held to be the full value of the life of the deceased, without any deduction of the necessary expenses of the deceased had he lived.' Under the law, before this act, there was a deduction made; and to illustrate what the law means by that; when a wife, for instance, recovered for the death of her husband, there would be a deduction, after ascertaining what he could earn, for what his own expenses would have been. This law changes that, and the value of the life is to be considered without that. Of course, whether or not the plaintiff is entitled to recover at all depends upon what you may believe from the facts in the case, after the court has given you certain principles of law to control you in your deliberations. The jury, in arriving at the value of the life of the child, if you get to that point, may consider, if you desire to do so, and it is for you to determine, some tables which have been offered in evidence,—mortality tables and annuity tables. It is for you to say from the evidence, taking it altogether, if the plaintiff is entitled to recover the value of the life of the child,—of this boy,—and you would find accordingly.

"The first inquiry of the jury upon the question of liability is whether or not the defendant in this case, by its servants and employes, was guilty of negligence. It was the duty of the defendant, by its employes in charge of this train, to have exercised ordinary care and diligence in the management of the train as to any person who might be upon the track, and this care and diligence would be considered by the jury in reference to the location of the

place; You will consider what they were doing, the business in which they were engaged, the way the train was made up, the question of a lookout, and observe where they were going, and, again, in that connection, whether or not persons were in the habit of passing to and fro across the track away from the street at this point, and see whether there was due care and diligence exercised on the part of these employes in reference to that fact.

"The jury would ascertain, in the first place, whether or not the defendant, by these employes, in the management of this train, was guilty of any negligence. If they were not guilty of any negligence, your duties would end there, and you would find for the defendant. It would not be necessary to go any further in your investigation of this case. If you should believe, from the facts in this case, that the defendant, through its employes, was guilty of negligence in failing to exercise ordinary care and diligence in the management of this train, still, if the plaintiff, by the exercise of ordinary care on her part, could have avoided this accident to her child, she would not be entitled to recover, although you might believe the defendant's employes were guilty of negligence. That you may fully understand it, I will repeat that, if the plaintiff, by the exercise of ordinary care on her part in reference to this child, could have avoided the accident to the child, though the defendant was guilty of negligence, she would not be entitled to recover. The contention here is as to the plaintiff allowing the child to go upon the track, and to be upon the track. In that connection you would consider, of course, what evidence there was, and what these children said as to this boy being sent upon a particular errand, as to whether that was dangerous or not; whether the facts show there were ways to pass under and around without danger, and the other evidence as to the deceased and these other children being frequently seen upon these tracks and about these tracks, and whether notice had been brought home to the mother that these children had been upon the track; what evidence there was upon that subject you should consider upon the question as to whether she herself was guilty of negligence.

"As to the negligence of the child, I think the law is that the jury must believe that the child was of sufficient age, of such maturity and intelligence, as to know the danger of crossing a railroad track in front of a moving train. Was the child of sufficient age and maturity, mentally, to know the danger in which it placed itself in going in front of a moving train? That is for the jury to determine. Unless it had, the law would not charge it with any negligence at all. If he had sufficient age and intelligence to know the danger there would be, and the risk in going where it did, the negligence of the child would be considered, and if it, by the exercise of ordinary care, could have avoided the accident, the mother here would not be entitled to recover, even if you find the defendant's employes guilty of negligence. However, there are two versions to this case, which seem to the court to control it, and as to what you may believe in reference to that, I have just given you the principles of law in charge, which I have stated as general principles of law and applicable to this case. It is said on the part of the defendant that this accident occurred at one place, and on the part of the plaintiff at another, and considerable evidence has been introduced pro and con upon that subject. Now, if you believe that the child walked or ran in front of this moving train, there being a proper lookout on the train, without notice to the defendant's employes that he intended to do so, and was knocked and immediately run over and killed before the train could be stopped, the plaintiff would not be entitled to recover. Now, see, gentlemen, in the first place, whether that is true of the case as advanced here by the defendant, and by the witnesses presented by it to sustain that view of the case. If you believe that to be true, if you believe the child walked or ran in front of this moving train,—there being a lookout on the train to notice in front of it,—without notice to the defend-

ant's employes that he intended so to do, and he was knocked down and immediately run over and killed before the train could be stopped, the plaintiff would not be entitled to recover. There would be no evidence whatever from which you could say there was negligence, and the court would not be willing, if those were the only facts in the case, to sustain a verdict in favor of the plaintiff, and the jury would not be authorized to return one if they believed these facts to be true.

"If, on the other hand, this child was knocked down and caught up in some way and was carried for some distance, as contended here, then the question would be this: Did these employes know, or did they have such warning as, if they had given heed to the same, and exercised ordinary care, they would have known, the perilous condition of the boy, and could they, by the exercise of due care, in view of such knowledge or warning, have stopped the train and saved the boy's life? If so, the defendant would be liable. I repeat, gentlemen, did the defendant's employes know, or did they have such warnings as, if they had given heed to the same, and exercised ordinary care, they would have known, the perilous condition of the boy?' Then, if by the exercise of due care, in view of such warning or knowledge, they could have stopped the train and saved the boy's life, the defendant would be liable. These are the two contentions in this case, and it is for you to determine by the evidence if one or the other is true. There is no evidence that the thing occurred in any other way. Counsel have argued the facts at length, and the whole matter has been presented for your consideration. I shall not undertake to go into a discussion of the evidence at this late hour, because you have had it thoroughly and fully discussed before you. Which view of the case is true? The defendant's view of the case, as I understand it, would come within the principles of law I have given you,—the defendant would not be liable. In the plaintiff's view of the case, it would be liable. In the plaintiff's view of the case, it would be necessary for you to believe that knowledge was brought home to these employes, or the warning was such they could have known the condition of the boy, and could then have stopped the train and saved his life. If that is true, the plaintiff would be entitled to recover, and ought to be entitled to recover in law anywhere, of course."

There was a verdict for the defendant. The following assignment of errors shows the requested charges refused by the court:

"(1) The court erred in refusing to charge the following written request of plaintiff, presented in proper time and manner: 'The negligence of the child, (if you find he was capable of legal negligence, under the instruction already given,) or the negligence of his mother, if you find she was negligent, is no excuse for the defendant, if the agents and employes in charge of this train could have prevented the killing of this child after they knew, or should have known, its perilous position. Such killing the law would denominate as reckless, willful, or wanton, and no degree of negligence by the child or its mother would excuse the defendant in this event.' The refusal to give this request in charge was error, because the same was legal and appropriate, and was nowhere covered by the court in its general charge.

"(2) The court erred in refusing to charge the following written request of the plaintiff, presented in proper time and manner, to wit: 'The fact that the deceased child was trespassing on defendant's tracks did not render it lawful to kill him if such killing could have been avoided by using ordinary care. If this child was caught by defendant's car, and was unable to extricate himself, and the employes in charge of the train knew, or should have known, by using ordinary diligence, of the child's perilous position, and have stopped the train, and yet recklessly or willfully or wantonly carried the child without stopping or attempting to stop until he was killed, the defendant would be

liable.' The refusal to give this request in charge was error, because the same was legal and appropriate, and was nowhere covered by the court in its general charge.

"(3) The court erred in refusing to charge the following written request of plaintiff, presented in proper time and manner, to wit: 'If this child was caught on the end of a car, and was carried a considerable distance, and then run over, and the train could have been stopped and his life saved, the railroad is liable, notwithstanding the mother may have been guilty of gross negligence in sending the child on the track.' The refusal to give this request in charge was error, because the same was legal and appropriate, and was nowhere covered by the court in its general charge.

"(4) The court erred in refusing to charge the following written request of plaintiff, presented in proper time and manner, to wit: 'The fact that the mother sent this child to Peachtree street to collect money is not negligence if the child was not instructed to go on this railroad, and if the child could have reached Peachtree street by not passing over the tracks.' The refusal to give this request in charge was error, because the same was legal and appropriate, and nowhere covered by the court in its general charge."

The fourth error assigned is not mentioned in the brief of counsel for the plaintiff in error, and will be considered as waived. The other three errors assigned resolve themselves into this: that the trial judge should have added to the last paragraph of his charge as quoted above:

"That if the negligence of the defendant was wanton and willful, and the child's life could have been saved by the employes in charge of the train, after its perilous position was known, (or, under the circumstances, should have been known, by said employes,) the negligence of the child in going upon the track, or of his mother in allowing him to be there, would not relieve the defendant."

It is evident from the record that the general charge was oral, and not reduced to writing, (in longhand,) until after the trial. The verdict was returned November 27, 1891, and there is in the record, immediately following the charge, this memorandum signed by the judge, and dated December 2, 1891: "The foregoing charge is approved as correct." The trial had protracted that day's session of the court to a late hour. The counsel for the respective parties had discussed the evidence thoroughly and fully. They had doubtless, as the manner of counsel in such cases warrants us in assuming, stated in the strongest light possible, under the sanction of adjudged cases, their view of the law as applicable to their respective contentions as to the facts proved by the evidence that had been given the jury. The plaintiff's counsel had just concluded his summing up of fact and law to the jury, and the judge then proceeded to instruct the jury orally. He must give such instructions, and only such, as are applicable to the evidence admitted. What, therefore, is more natural and proper than that he should take up the case as the parties themselves had presented it to the jury, and, by way of preface and explanation to the single issue to which the trial had reduced it, give the jury the received doctrines as to negligence, primary and contributory? It is not contended that the charge, so far as it goes, is not sound, the only contention being that it does not go far enough, and more distinctly instruct the jury that the doctrine of contributory negli-

gence, as stated in the charge, is not applicable, if the proof satisfies them that the killing occurred as plaintiff contends. Keeping in mind the time and circumstances of its delivery, we are satisfied that the charge of the court is not subject to the criticism the plaintiff levels at it. After covering the whole case, as it was doubtless presented in the pleadings, (only the petition of plaintiff is sent up,) and in the evidence, and in the exhaustive argument of counsel, the judge, in conclusion, tells the jury:

"These are the two contentions in the case, and it is for you to determine by the evidence if the one or the other is true. There is no evidence that the thing occurred in any other way. * * * Which view of the case is true? The defendant's view of the case, as I understand it, would come within the principles of law I have given you,—the defendant would not be liable. In the plaintiff's view of the case it would be necessary for you to believe that knowledge was brought home to these employes, or the warning was such that they could have known the condition of the boy, and could then have stopped the train and saved his life. If that is true, plaintiff would be entitled to recover."

We are of opinion that on the point complained of the charge was clear and full, and to have repeated the instruction in the terms of the requested charges would have given it undue emphasis. We are therefore of opinion that the judgment of the circuit court should be affirmed; and it is so ordered.