Opinion delivered April 20, 1888.

## No. 5733.

### HOUSTON & TEXAS CENTRAL RAILWAY COMPANY *v.* JOHN H. BOOZER.

1. DAMAGES.—Damages resulting from personal injuries to a minor which diminish his capacity to earn a living, when claimed in a suit prosecuted for the minor's benefit by a next friend, can only be received for the period which may follow the majority of the minor. Until that period the minor would have no interest in the proceeds of his own labor. When, however, the verdict and judgment are for the plaintiff, and there is no complaint that it is excessive, the judgment will not be reversed for a failure of the charge of the court to thus limit the liability of the defendant.

2. NEGLIGENCE.—If the owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to exercise his rights in view of the circumstances so as not to mislead others to their injury without a proper warning of his intention to recall the permission. In such a case when the user by the public of a path crossing a railway track might not consider it such a crossing as to impose on the company the statutory duty to signal the approach of its train, yet the failure to do so might, according to the facts of the case, constitute negligence.

3. SAME.—The degree of care requisite to avoid liability for negligence must be proportioned to the nature of the act performed, the place where performed and the extent of the danger and injury likely to result from a failure to use due care and prudence to avoid inflicting injury on others.

4. SAME.—It can not be held that a child should be held chargable with the same prudence in crossing a railway track that would be required of an adult in order to avoid having contributory negligence imputed to him. Whether such care and prudence is used by a child in crossing a railway track as would be incumbent on one of his age must be a question to be determined by a jury.

APPEAL from Grayson.   Tried below before the Hon. Richard Maltbie.

Suit brought March 2, 1880, for personal injuries received by appellee while crossing the appellant's track, in Denison, not at a public crossing.   The defense was a denial of the facts alleged in the petition, and contributory negligence.   The trial resulted in a verdict for appellee for five thousand dollars, which was sustained over a motion for a new trial, and the appellant appealed.

The appellee was injured when crossing the road track in a path that had been used by the public as a crossing.   Appellee testified that he heard a train, but thought it was on the Missouri, Kansas & Texas track; that he had crossed at the path often, and had never been told not to cross there; that he did not hear any bell or whistle when he crossed the Missouri, Kansas & Texas track; thought he saw a train moving; that if he had heard the bell or whistle he would have gotten out of the way; that his mother never cautioned him not to cross there.

Crowell, for appellee, testified, there were twelve or fifteen cars attached to the engine; that they were generally run out pretty fast; was fireman on the engine; did not see the boy when run over; boy was lying where a little path crossed the railroad track; the bell was not rung or whistle blown; engine was not provided with any means of throwing objects from the track; thought both engineer and himself were looking back as they run; the engineer was running with his hand on the throttle, looking out of the window towards the yard for signals; no one on the engine but the engineer and himself; boy was injured by the engine; did not see the boy until after he was hurt.

Witnesses testified, for appellee, to the path being there, and had been for years; also to its use; to the yards and tracks being open and constantly used by the inhabitants of the city in crossing from one side of the railroad to the other, and no signs warning them not to do so had been erected, nor notice forbidding it.

Alice Jones testified, when plaintiff was hurt was living next door to his mother; thought he was hurt in the forenoon.   Alice Johnson called her attention to his being hurt by hallooing; went to the window and asked what was the matter?   She said a boy was run over by an engine; went up there and it was

Henry Boozer that was hurt; he was lying on the side of the track; there was a path where he got hurt; saw the path there before—crossed it enough to see it. Alice Johnson was standing south of the trestle work when she hallooed. She could see to where the boy was hurt when I saw her; she was in the street, looking in the direction of where the boy was hurt; asked her what was the matter; she answered that a little boy was run over by an engine.

Al Hall testified about the path, for appellee.

Haynewood testified, for appellee, that Simmons's (the engineer's) eyes were bad at the time of the accident.

H. Tone, witness for defendant, testified there was a large settlement south of the ravine, and east of the railroad; that it was about one thousand three hundred feet from Main street crossing to Morgan street, south; that there were streets mapped out between these two crossings, but none open from the settlement straight northwest; it was about one hundred yards nearer than by either of the street crossings; that there had always been a great many cars moving and switching and noise of engines.

Simmons, witness for defendant, and the engineer testified. Did not see the boy, though was looking out all the time, and nothing in the way; bell not rung nor whistle blown; no brakeman on the cars; did not ring bell unless going over crossing; run his engine according to law; rung bell in going over crossing because the law required it.

Jergin testified, as to path; that Simmons had defective eyes and a bad reputation for truth.

Overturf testified that Simmons's reputation for truth was bad.

Summerville testified, for plaintiff: Am superintendent of the city schools at Sherman; was superintendent of schools at Denison seven years; knew plaintiff, and knew him in 1879; he was then in attendance on the public schools in Denison; he was of ordinary intelligence; not above ordinary.

R. DeArmand testified: "I am an attorney at law, and as such represented this defendant in the trial of this case, March term, 1883, of this court. I heard the testimony of Henry Boozer, the plaintiff. I cross examined him. He testified he did not listen for cars before going upon the track. On that examination he said that he did not look to the right or to the left before going upon the track. He did not testify about

looking north at all, but said he was looking down in the path before him, and was thinking about getting home. He testified that he had been cautioned by his mother about going upon the railway track. I recollect his statement distinctly without reference to the statement of facts. I considered it a leading point in the case, and remember it distinctly. I can not now remember whether he was ever before asked whether he looked north or not. I know he was examined and cross examined to elicit how he came to get hurt, but what the exact questions were I do not remember, but do remember the fact that he testified that he looked neither to the right nor to the left before going upon the track, but right down in the path thinking about getting home."

Appellee further testified: "I came to the embankment of the Houston & Texas Central Railway; saw some box cars, but no engine. I am not certain I did not see an engine. I remember I saw cars; I know that, and they were box cars. I then went upon the track of the defendant's road. When I got upon the embankment, I looked north and saw an engine. The embankment is about twelve feet wide on top. When I got upon the top I sorter glanced around and saw an engine. It was a good little distance from me. It was as far as the houses on the other side of the street. I was looking north. I just sorter glanced around. There was nothing between me and the engine. It was not moving. I don't know whether it had steam up or not. I am certain I saw the engine. It would have taken four or five and not more than six steps to cross the track and embankment. I remember distinctly glancing around north when I got on the embankment. I went right across the embankment. I heard the train moving, but thought it was on the Missouri, Kansas & Texas track. When I got up on the embankment I just turned my head a little bit, and remember seeing an engine."

One Crowell testified: "I was the fireman on the engine when the accident happened. The engine was in front of the cars, and ran out of the yard and crossed the trestle for the purpose of shifting the cars to another track. I did not see the boy until after the train had stopped, which was after the accident. My belief is I was looking back for signals at the time of the accident. I did not see the boy on the track, as I was not looking out in front."

J. T. Simmons says: " I was the engineer on the engine at the time of the accident. My fireman, Mr. Crowell, said something about somebody running, was the first I knew of anybody being hurt. The first I saw of the boy, they were carrying him by the bridge, taking him home. Before we started out, we were standing two hundred or three hundred feet north of the bridge. We were switching the cars to different places where they were wanted. I was on the west side of the engine. I pulled out over the bridge until I thought the rear end of the rear car was past the switch; then reversed my engine and looked back to see if we were past the switch. I was looking ahead until I reversed my engine. Nothing interfered with my seeing ahead. I looked out to see anything that might be on the track ahead. There was nothing the matter with my eyes at the time. I may have worn glasses. I sometimes did. to keep cinders and smoke out of my eyes. My eyes were sore for a while when I worked at Houston, but not since I have been up here. I did not see any object ahead of me except what ought to be there. I could see all the track between the switch and trestle. Plaintiff did not come upon the track ahead of me. This train made a good deal of noise with the wheels and the exhaust of steam. It could be heard one hundred yards if you were listening for it. I kept a good look out and did not see the boy."

Mrs. Frazier says: " She has seen appellee playing on the cars with other boys, and has seen the yardmen run the appellee and the other boys off the yard, and has known them to go back again after having been run off."

Appellee's mother testified: " The path crosses just north of the trestle work. The path goes up the embankment about opposite the cabin next to the ravine, and runs northwest."

Crowell, the fireman, says: "Appellee was laying fifteen or twenty feet from the north end of the trestle where a little path crosses the track."

Tobin says: "It was a plainly marked path twenty or twenty-five yards north of bridge."

J. H. Burch testified: " The path crossed fifteen or twenty feet north of bridge. There is no wagon crossing at the north end of bridge nor within fifty feet from the north end of the bridge. A man could cross there on horseback, but not in a wagon. There is no public road crossing there, nor between the street south of the bridge and Main street north of it."

*R. D. Armond,* for appellant: That when there is positive error in a charge as given, the party affected injuriously thereby is not bound to ask a charge on the point in order to entitle to a revision of the error on appeal, citing Ford v. McBride, 45 Texas, 498; Steel v. Paschal, 41 Texas, 640; Murchison v. Warren, 50 Texas, 27, and Robinson v. Varnell, 16 Texas, 382.

He insisted that a new trial should have been granted for insufficiency of the evidence to authorize a recovery.

*Woods, Wilkins & Cunningham,* for appellee: On appellant's negligence they cited Nixon v. Railway Company, 52 Texas, 27; Railway v. Sympkins, 54 Texas, 615; Railway v. Weisen, 6 Law Review, 155, Lowry v. Railway, 61 Texas, 149; Cooke v. Railway, 64 Texas, 151; Railway v. Smith, 62 Texas, 252; Evansich v. Railway, 61 Texas, 3; Railway v. Simpson, 60 Texas, 103; 2 Thompson on Negligence, pp. 1153, 1154, 1157; Shendon v. Railway, 36 N. Y., 39.

On Negligence of appellee they cited Evansich v. Railway, 61 Texas, 3; Railway v. Simpson, 60 Texas, 103; Thurber v. Railway, 60 N. Y., 326, and Kerr v. Fargue, 5 American Reports, 146.

On license to use pathway they cited 1 Rorer on Railroads, 476, and Railway v. Anderson, 4 Texas Law Review, 212.

STAYTON, ASSOCIATE JUSTICE. This action was brought by appellee, through his next friend, to recover damages for an injury alleged to have been caused by negligence of the employes of the appellant.

At the time of the injury the appellee was a child in his twelfth year, and he was injured while attempting to cross the railway track.

The first assignment of error is as follows: "The court erred in the fifth paragraph of its charge to the jury, wherein it is stated by the court to the jury that in estimating the amount of damages that plaintiff might recover, the jury might consider plaintiff's diminished capacity, if any, to labor and earn a livelihood for the following reasons: The plaintiff is a minor. The evidence shows he was living with his mother at the time of the injury, and still is. She is therefore entitled to his earnings during minority. That his father is dead, and that his mother has now a suit pending against defendant for damages occasioned plaintiff from the same accident."

The part of the charge complained of, considered with relation to an adult seeking to recover for an injury to himself, would be strictly correct, but in the case in which it was given the court should have limited the liability for damages resulting from diminished capacity to labor caused by the injury to the period after the appellee's majority, for until that period was reached the appellee would not be entitled to the proceeds of his own labor and would not be entitled to damages on account of his diminished capacity. We are of the opinion, however, that we would not be authorized to reverse the judgment on account of this charge, even if it was not the duty of the appellant to have asked a proper charge in this respect, for there is no complaint made that the verdict of the jury was excessive. The only effect the charge could have had would have been to cause an excessive verdict, and it in no way had a bearing on the question whether the appellant was liable at all under the facts.

The controversy in the lower court, and here, is as to whether, under the facts, the appellant is liable at all.

The appellee was injured while attempting to cross the track at a path leading from the thickly populated part of the city of Denison to houses on the opposite side of the railway, which seems to have been frequently used by many people for a considerable period without objection. In such a case, as said by the Supreme Court of Pennsylvania, "If an owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce a confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to experience his rights in view of the circumstances so as not to mislead others to their injury, without a proper warning of his intention to recall the permission."

Whether, in view of the facts attending the use of the path, the railway company used that care which it ought to have used to guard persons from injury, was a question for the jury, and there was evidence tending to show that no lookout ahead of the train was exercised, though upon this point there was a conflict of evidence; but that there was any warning given of the approach of the train other than such as would result from its movement, is not claimed.

Although it might not be the statutory duty of a railway company, at such a place, to give the signals of an approaching train as is required at a public crossing, yet the failure to

Opinion of the court.

do so might be negligence. The engineer stated that he was looking ahead, and that he did not see the boy at all, but from the other evidence in the case the jury may have come to the conclusion that his statement was not true. The degree of care that should be used must be proportioned to the nature of the act performed, the place where performed, and the extent of danger and injury likely to result from a failure to use due care in avoidance of injury to others. We can not say, under the evidence in this case, that the employes of the appellant used that care which the law requires.

This case was before this court at a former term, when a judgment in favor of the appellee was set aside, on the ground that it appeared from the evidence that the injury resulted from the contributory negligence of the appellee. Another jury has passed on the case, under evidence tending to relieve the appellee from the charge of contributory negligence, which was not before the jury on the former trial. As the case now stands, were the appellee an adult, it seems to us the verdict should be again set aside; but we can not say that the same degree of care should be exacted of a boy of the appellee's age as must be of an adult. Whether he used that care in attempting to cross the track, and in ascertaining the danger that attended his act, incumbent on one of his age, was a question submitted to the jury by a charge which, on this point and all others bearing on the question of the liability of the appellant at all, was as favorable to the appellant and as exacting on the appellee as the facts would have warranted.

Two juries have passed upon the facts, twice have judges of the district court refused to grant new trials, the appellee was of tender years, there was evidence from which the jury might find that the employes of the appellant did not use that care which, under the circumstances, should have been used, and the jury were in position to determine whether the acts of the appellee were, in one of his age, the exercise of such care as such a person should exercise.

The rules by which this court is necessarily governed in setting aside verdicts, on the ground that they are contrary to the evidence, have been too often announced now to require repetition. We can not see our way clear to the granting of such relief in this case, and the judgment must be affirmed.

*Affirmed.*