ADAMS v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fifth Circuit. January 3, 1898.)

No. 572.

1. RAILROADS—INJURY TO PERSONS ON TRACK—TRESPASSERS.
   A declaration, in an action to recover for the death of children killed on defendant's railroad track by one of its cars, which alleges a custom by the public for 10 years to use the track at the place where the injury occurred as a footway, as was being done by the children, and that such custom was known to, and acquiesced in by, the officers of the defendant company, is sufficient to require the question as to whether the children were trespassers to be tried and determined as one of fact.

2. SAME—NEGLIGENCE—PROXIMATE CAUSE.
   Where a car escapes from control through the negligence of the servants of a railroad company, and, after running three-fourths of a mile, injures

persons on the track, the company is not relieved from liability on the ground that the negligence was not the proximate cause of the injury.

In *Error* to the Circuit Court of the United States for the Northern District of Georgia.

Action by Mahulda C. Adams against the Southern Railway Company. A demurrer to the declaration was sustained, and plaintiff brings error.

J. T. Pendleton, for plaintiff in error.

R. S. Dorsey and Sanders McDaniel, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge. The original declaration and its amendments show: That the plaintiff was the mother of two children,—one a son aged 11 years, and the other a daughter aged 7 years. They resided on Mangum street, in the city of Atlanta, where the plaintiff kept a boarding house, and was assisted by these children. The children were attending school on Marietta street, in the city of Atlanta. About noon on September 12, 1895, they were passing from the school to their home over and along a floored trestle of the defendant railroad company over Rhodes street, in the city of Atlanta; and while so passing over said trestle an oil-tank car in possession of, and being operated by, the defendant, ran over these children, and inflicted such personal injuries as caused the immediate death of the boy, and the death of the girl within a few hours. The floored trestle or bridge over Rhodes street is 30 feet wide, and is closely covered with heavy, two-inch plank, securely nailed, making a fine, level walkway. That the tracks of the railroad at the bridge, and for some distance from each end of same, run parallel with, and adjacent to, Elliott street. That, before the railroad was built, Mechanic street entered into Elliott street near one end of said trestle, but was cut off by the railroad embankment, and now stops at the railroad; and on the south side of the railroad, next to Elliott street, there is a deep descent into Elliott street, 50 feet down this embankment, down which people never go, but turn up said railroad, across the floored trestle or bridge, and go into Elliott street beyond the bridge, where the railroad and the street are on a grade. That, at 150 feet from each end of the bridge, Elliott street is on a grade with the railroad, but immediately at the bridge it is 60 feet below the grade of the railroad; and Mechanic street, coming right up to the railroad at the commencement of the trestle, was stopped there by the railroad and trestle, and the only connection between that street and West Hunter street, at the other end of said trestle, along which two streets (Mechanic and West Hunter) the children were going home, was over the trestle. That men, women, and children had for 10 years prior to that time (September 12, 1895), in great numbers, passed over that trestle daily, and that they were so passing over the same was known to the officers of the railroad company, and to the servants of the railroad company then managing and controlling said oil-tank car. That there is an ordinance of the city of Atlanta pro-

hibiting any railroad company from running any car within the corporate limits of the city at a greater speed than 6 miles an hour. That the trestle is within the corporate limits of the city of Atlanta, and that the car in question was permitted to run at the rate of 20 miles an hour. That the car had been left standing on the track of the railroad company, in its yards, near the junction of its track with Fair street, in said city, at a point three-fourths of a mile distant from said trestle, from which point the track is on a down grade to, and far beyond, the trestle; so that a car starting at Fair street will run, of its own motion, for several miles, and gradually increase its speed. That cars had frequently got loose in said yard, and rolled 8 or 10 miles on said grade, and defendant's superintendent had issued an order (known as "Bulletin Order") that no conductor or crew should switch or move any car with brakes so defective that they could not be used, which said order was posted on the bulletin board at the office of the train dispatcher in the yard of defendant company, in the southern part of the city of Atlanta, and had been so posted for more than 20 days before these children were killed, and was in force at the time, and was only taken down about 3 hours after the killing. That the oil-tank car in question was, on the day before the children were killed, marked by the car inspector: "B. O. Hold. Brake,"—which was known by the conductor and the crew to mean that the car was in bad order, and was held for work on the brakes. That the condition of the car was known to the conductor and the crew handling the same, or could have been known in the exercise of reasonable care in inspecting the same. That the crew was switching the car for the purpose of moving it, and struck it with other cars, which caused it to roll, because there were no brakes on it. That in order to get the engine on the side track, to get some cars thereon, the crew "kicked" two cars that were attached to the engine, which struck said oil-tank car, and started it rolling. That the eyebolt of the brake chain that fastened the chain through and to the brake rod was broken, so that the brake chain was not fastened to the brake rod, and made the brake wholly useless, so that the servant of defendant company, who got upon said car when it was moving very slowly, could not put on the brakes and stop said car. The pleadings are somewhat involved, but substantially embrace the averments as above summarized, together with proper averments as to damage, and other matters not contested. The defendant demurred to plaintiff's declaration, that it showed no cause of action, and moved its dismissal, on the hearing of which demurrer to the original declaration and the amendments filed, the circuit court sustained the same, and ordered that the cause be dismissed at plaintiff's cost; to review and reverse which action this writ of error is sued out.

The demurrer being general, and the judgment thereon general, the single error is assigned that the court erred in its judgment. There is nothing in the record to indicate on what particular ground or grounds the circuit court sustained the general demurrer. We gather from the briefs of counsel that the defendant railroad company contended in the circuit court, as it does in this court, that the children were trespassers upon the track of the defendant company's

road, and that it owed no duty to them; and contended further that the action of defendant's servants in connection with the oil-tank car, at a distance of three-fourths of a mile from the place of the injury, could not be relied on as negligence of the defendant, because too remote in time and place; and that, if both of these positions are held to be unsound, the declaration, on its face, shows such contributory negligence on the part of the children as would prevent recovery in this case. Against which contentions the plaintiff urges that the facts averred in the declaration show that the children injured were not trespassers upon the track at the time of receiving the injury, that the defendant and its servants were not authorized to assume that the track would be clear on the trestle or bridge in question, that the injury was the direct result of the negligence of the crew in handling the defective car, and that no act of the children tended to constitute contributory negligence on their part.

The question as to whether persons are or are not trespassers upon the track of a railroad company is generally one of fact, or of mixed law and fact. The evidence may be so undisputed and so clear in some cases as to authorize the court to declare that the parties are or are not trespassers, but such cases are now rare. In the beginning and early history of railroad operations, the number of such roads, and the number of their tracks and of the trains run thereon, were so limited, and all of the features so novel, that their actual presence at any point was a signal that arrested attention, and gave warning for the exercise of care by all who wished to pass across or along their tracks. The tracks and trains were run only where the pre-existing community felt the need for them, and gladly gave the companies the paramount right of way at public and licensed crossings, and exclusive right of way at all other points. The number of running trains was small, and the rate of speed moderate; and it was not then necessary, or deemed prudent, to run the roads into, and through the business centers of, such towns as Atlanta. Within comparatively a few years through passenger trains of Pullman sleepers from our national capital to our commercial capital were drawn through Baltimore by teams of horses. Now, the railroad companies, by contract, or by the exercise of the delegated power of eminent domain, push and concentrate their roads, and multiply their tracks, into the hearts of most of the capital towns of the country. When the question as to who were trespassers on railroad tracks, and what duty, if any, the companies owed to such persons, first demanded judicial decision, analogies were sought in reported cases arising out of other operations, and out of injuries received by strangers on the private premises of others. Guided by the analogies of such cases, which then appeared to be close and instructive, and which were more helpful then than now, it appears to have been held that all were trespassers on a railroad track who could not claim the right under some public regulation, some contract of the parties, the invitation of the corporation, or such notorious use continued for such time as would give a right by the longest period of prescription for acquiring an interest in land, and that the corporation owed no duty to those who were trespassers. It soon became manifest

that this doctrine was too harsh to apply to the operation of such agencies as are in use upon railroads, and that those agencies, and the modes of their use, are of such a nature as impose upon persons or parties using them a high degree of care, not only for the personal safety of passengers and employés, but of the general public. And a more humane rule was declared, that where the servants of the corporation in charge of the operation of trains have knowledge of the exposed condition of the party injured, or the circumstances are such that a reasonably prudent man in the position of those servants would take knowledge of it, the corporation cannot claim exemption from liability for the injury inflicted through negligence of its servants under such circumstances. And, further, in the matter of passing across a railroad, or along its track, at points where no public crossing had been established by law or contracted for by the parties, and where no express invitation had been extended to the public or to individuals for such use, that the notorious, frequent, and continued use thereof for such purpose by individuals or the general public, known to the officers and servants of the company, and acquiesced in by them without objection, would imply such a license as would relieve parties so using it from the charge of being trespassers, and would charge the corporation with the duty of expecting such persons to be on its track, and to use reasonable care to avoid inflicting an injury on them. Some unguarded expressions occur in a number of the more recently reported decisions, and a few cases in the courts of some of the states appear to support the contention of the defendant in this case, and to sustain the action of the circuit court in its ruling on the demurrer. Most of the cases which we have examined differed from this case, in that the whole case was before the appellate court, and the questions considered arose on the consideration of the whole proof in courts sitting as courts of appeal, and passing upon the evidence, or upon instructions given or refused, on states of fact fully shown by bills of exception. We are not called upon to say that the facts pleaded with reference to the use of the covered trestle or bridge over Rhodes street constituted an implied license to the public to use that bridge; nor are we called upon to say that the defendant, in the matter of handling the oil-tank car as charged in the pleadings, was or was not guilty of negligence; nor are we called upon to say that the children were or were not guilty of contributory negligence. All that we are called upon to decide, and all that we do pass on, is whether such a case is made by the pleadings of the plaintiff as required the defendant to answer, and the court to submit issues to the jury.

What we have already said clearly indicates that, in our view, the question of whether the use of the trestle had been such as to constitute an implied license to the public to pass over it, and relieve the children of the charge of being trespassers, should have been submitted to the jury. This view, we think, is supported by the great weight of recent decisions. The cases are so numerous that to review them would be tedious and unprofitable. We cite only a few, which, with those to which they refer, sufficiently show the present state of the authorities: Bennett v. Railroad Co., 102 U. S. 577; Fletcher v.

Railroad Co. (Nov. 1, 1897; not yet officially reported) 18 Sup. Ct. 25; Cahill v. Railway Co., 46 U. S. App. 85, 20 C. C. A. 184, and 74 Fed. 285; Felton v. Aubrey, 43 U. S. App. 278, 20 C. C. A. 436, and 74 Fed. 350; Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Railway Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342; Railway Co. v. Boozer, 70 Tex. 530, 8 S. W. 119; Railroad Co. v. Hewitt, 67 Tex. 473, 3 S. W. 705; Roth v. Depot Co. (Wash.) 43 Pac. 641; Barry v. Railroad Co., 92 N. Y. 289; Taylor v. Canal Co., 113 Pa. St. 162, 8 Atl. 43; Chenery v. Railroad Co., 160 Mass. 211, 35 N. E. 554.

The elementary principle, fundamental in all civilized life, to test that degree of care, the absence of the reasonable use of which constitutes culpable negligence, is that a party must so use his own, and so conduct himself, as he would have a right to expect that another, honest, reasonably prudent, and humane, would do under similar circumstances. Subject to certain well-settled limitations, the fit adjustment of this principle to the infinitely varying conditions of particular cases can best be made by the jury. It is clear to us that if the defendant was negligent in the handling of the oil-tank car in question, in its yards at the junction of Fair street, by which the car escaped from control, and rushed down the track at a great speed, and across the bridge on which the children were, and inflicted the injury of which they died, the cause was direct and proximate, and the defendant could not be relieved on the ground that the cause was remote, and the effect not to have been expected. There is in the declaration no suggestion of any act upon the part of the children that would constitute negligence, other than the mere fact of their being run down and killed by a blind car coming on them from the rear at a fearfully excessive rate of speed, without any signal or note of warning other than the noise that the movement of a single car would make, which, even to ears of adult experience, must have been inaudible at the given time and place. As already suggested, the test to be applied to a given state of facts, either by court or jury, to determine whether they constitute negligence, is our common knowledge of what would be the conduct of a reasonably prudent person of like age and experience in like circumstances. The same degree of care is not expected of children of the age of 7 and 11 years that could reasonably be exacted of mature persons, having the experience which comes as all experience does with maturing years. This circumstance of age, however, like all the other circumstances of the situation, is an element of proof to be considered by the jury in finding the presence or absence of contributory negligence. We conclude, therefore, that the circuit court erred in sustaining the general demurrer to plaintiff's declaration, for which error its judgment is reversed, and the cause is remanded to that court, with directions to overrule the demurrer and award the plaintiff a venire. Reversed and remanded.