## TARRANT COUNTY TRACTION CO. v. BRADSHAW. (No. 8355.)

(Court of Civil Appeals of Texas. Ft. Worth. April 8, 1916.)

1. APPEAL AND ERROR ☞216(2)—SCOPE OF REVIEW — PRESERVATION OF EXCEPTIONS — WAIVER OF REJECTIONS—INSTRUCTIONS.

Objections to a charge as defective or incomplete cannot be considered on appeal, unless request was made on the trial for a special charge correcting the alleged errors.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞216(2); Trial, Cent. Dig. § 628.]

2. TRIAL ☞260(8) — INSTRUCTIONS — SUFFICIENCY—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

Where the court fully and fairly presented in the charges given the issue of contributory negligence, it was not error to refuse a requested charge on that question which was covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 657; Dec. Dig. ☞260(8).]

3. DAMAGES ☞191—MEDICAL ATTENDANCE—EVIDENCE.

The mere fact that plaintiff's attending physician qualified his statement that the reasonable charge for his services was $25 by the clause, "if the patient were able to pay it," would not necessarily limit or destroy its weight as a statement of their reasonable value.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 504, 510; Dec. Dig. ☞191.]

4. DAMAGES ☞46, 101 — MEDICAL ATTENDANCE—LIABILITY—EXTENT.

Where plaintiff is entitled to recover for medical attention and medicines necessary in the treatment of injuries, defendant is liable, not for the amount actually expended or incurred, but only for the reasonable or market value of such services and drugs as were reasonably necessary and for which plaintiff has paid or legally bound himself to pay, since defendant is not a party to the contract for services.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 99, 242–254; Dec. Dig. ☞46, 101.]

5. DAMAGES ☞46 — MEDICAL SERVICES—LEGAL LIABILITY.

Where plaintiff sent for a doctor and accepted his services, in the absence of some other agreement, he would be legally liable to pay therefor.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 99, 251; Dec. Dig. ☞46.]

6. DAMAGES ☞191—LIABILITY—EVIDENCE—SUFFICIENCY—MEDICAL ATTENDANCE.

Evidence that plaintiff sent for a doctor and accepted his services, together with the doctor's statement that his services were of the reasonable value of $25, if plaintiff could pay it, is sufficient to sustain an award of that amount.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 504, 510; Dec. Dig. ☞191.]

7. DAMAGES ☞163(1)—BURDEN OF PROOF—EXPENSES—NURSING.

Where plaintiff pleaded that his wife nursed him for 30 days after the injury for which he sought recovery, and that her services were reasonably worth $2 per day, and the evidence showed that it was necessary to have a nurse and that the wife and a neighbor did the nursing, that was insufficient, without proof of the reasonable value of the services, to support an award for the amount claimed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 454, 455; Dec. Dig. ☞163(1).]

8. NEW TRIAL ☞150(4)—NEWLY DISCOVERED EVIDENCE—AFFIDAVIT—SUFFICIENCY.

An affidavit for new trial alleging diligent effort by defendant before trial to learn the names of witnesses of an accident, that inquiry was put to witnesses as to other possible witnesses, that none of such witnesses disclosed that the newly discovered witness had seen the accident, and that the defendant nor its attorneys knew until after trial that he had seen it, sufficiently shows due diligence.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 310; Dec. Dig. ☞150(4).]

9. NEW TRIAL ☞104(3)—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE—OPPORTUNITY TO OBSERVE.

While new trial will not be granted for newly discovered evidence which is merely cumulative, evidence of a witness of an accident, who was more advantageously placed to see it, and who observed that plaintiff's horse began kicking when the breeching fell on its legs and not on the approach of defendant's car, is sufficient on which to grant a new trial, though there was other evidence that after the car came along, the breeching was down.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 220; Dec. Dig. ☞104(3).]

10. NEW TRIAL ☞103—NEWLY DISCOVERED EVIDENCE—MATERIALITY.

Where plaintiff testified that his injury resulted when his horse kicked, being frightened by defendant's car, newly discovered evidence that the horse began to plunge and kick when the breeching fell on his legs before the car approached is material so as to warrant new trial, if diligence is shown.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 215–217; Dec. Dig. ☞103.]

Buck, J., dissenting.

Appeal from Johnson County Court; B. Jay Jackson, Judge.

Action by W. C. Bradshaw against the Tarrant County Traction Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Ramsey & Odell, of Cleburne, for appellant. J. B. Haynes, of Cleburne, for appellee.

BUCK, J. Appellee filed this suit for damages on account of personal injuries alleged to have been received by him on or about February 13, 1915, alleging, in substance, that he was driving a horse attached to a delivery wagon at the southwestern corner of the public square in Cleburne, that one of defendant's interurban cars came from the southeastern corner of said square, and that appellee's horse became frightened at the car, and finally kicked him on one of his legs, resulting in the alleged injuries and consequent damage. The negligence alleged by plaintiff was that defendant's employés in charge of said car did not stop upon discovering that plaintiff's horse was frightened, and that it was further negligent in failing to keep a lookout to discover plaintiff, and in failing to know and realize his dangerous position.

Defendant answered, denying plaintiff's allegations, both as to his injuries and as to the manner in which such injuries were

caused. It further pleaded contributory negligence on the part of plaintiff in driving his horse to the place where he did drive it under all of the circumstances surrounding him at the time, and, further, in not alighting from his vehicle when the horse first began to show signs of fright, and thus escaping the danger of being injured.

A trial before a jury resulted in a verdict and judgment in plaintiff's favor for the sum of $150, from which judgment the defendant appealed.

[1] Appellant's first assignment is as follows:

"The court erred in the seventh paragraph of its charge to the jury, wherein it instructs the jury that plaintiff would be entitled to recover if they believed from the evidence that defendant's employés did not use ordinary care to keep a lookout, etc., for plaintiff, for the reason that said charge does not state, define, or limit the nature and character of the 'lookout' required to be maintained or kept by the employés of defendants in charge of said car."

If the charge as given was defective or incomplete in the respect urged, the appellant should have sought to cure the defect by requesting a correct charge from the court, and, having failed to do so, he will not be heard to complain of the charge in this respect upon appeal. Oil Co. v. Thompson, 76 Tex. 235, 13 S. W. 60, and other cases cited in 1 Encyc. Digest of Texas Reports, pp. 871–873. Defects or omissions in the charge given cannot be complained of where there was no request for a special charge correcting them. I. & G. N. Ry. Co. v. Collins, 33 Tex. Civ. App. 58, 75 S. W. 814; Milmo v. Adams, 79 Tex. 526, 15 S. W. 690; Cockrill v. Cox, 65 Tex. 669, and other cases cited in 1 Encyc. Digest, supra, 872.

[2] Under its second assignment appellant urges error in the refusal of the court to give special charge No. 2 requested, which, in substance, was to the effect that if plaintiff at the time of the accident knew that his horse was frightened at the car and he remained in his wagon until after the car had passed, and that if the jury should find and believe that an ordinarily prudent person, in the exercise of ordinary care, would not have remained in the wagon at the time and under the circumstances, and that his failure to alight from the wagon was contributory negligence, then they would find for the defendant. We think that in the fifth paragraph of the court's main charge the question of contributory negligence was fully and fairly presented, and the instructions in said paragraph cover those contained in the submitted charge, and the court did not err in refusing the requested charge.

[3] In plaintiff's petition it was alleged that on account of the injuries to his foot caused by the kick of the horse, plaintiff was confined to his room for a month or more, and was required to secure the services of a physician and to buy medicine in the treatment of his injuries, and that plaintiff's wife nursed him for a period of some 30 days, and that her services were reasonably worth the sum of $2 per day, and such nursing was necessary on account of the said injuries. Assignments 3, 4, and 5 urge error in the charge of the court allowing a recovery for "any reasonable expenses he (plaintiff) may have incurred for necessary medical treatment and medicine and nursing made necessary on account of said injuries." It is urged that there is no evidence to sustain the allegations in the petition with reference to such expenses, and that, therefore, the court erred in submitting the same as an element of damages.

Especially is it urged that there is no evidence as to the reasonable value of any nursing incurred, or medical services given, or medicines purchased. We think that the testimony of Dr. Yater, one of the physicians who waited on plaintiff and treated him for his injuries, is sufficient to sustain a recovery as to the medical services and medicine. After stating that he treated plaintiff, found him in bed, complaining of his right foot and hip hurting him, found his foot red and swollen, and that he gave him treatment therefor, he testified:

"The reasonable charges for the treatment and medicine that I gave Mr. Bradshaw, if a man was able to pay it, would be $25. In his condition it was necessary for me to have some one to nurse him."

We do not think the inclusion of the clause, "if a man was able to pay it," would destroy or necessarily limit the force of the testimony to the effect that the reasonable charge for the treatment and medicine would be $25. We understand that the witness meant to say, or that at least such is a permissible construction of his language, that the services rendered and the medicine furnished were of the reasonable value of $25, and that witness regarded plaintiff legally bound by reason of said services and medicines furnished to pay said sum, but that by reason of plaintiff's physical and financial condition, he might not be able to pay said amount, if any at all.

[4-6] Where a plaintiff is entitled to recover for medical attention and medicines necessary in the treatment of injuries, the defendant is liable, not for the amount actually expended or incurred by plaintiff, but only for the reasonable or market value of such services, drugs, etc., as were reasonably necessary and for which plaintiff has paid or has become legally bound to pay. The defendant, not being a party to the contract of employment between the plaintiff and the physician or nurse, or the contract of purchase between the plaintiff and the druggist, his liability, if at all, is not fixed by the amount paid or promised to be paid by plaintiff for such services and supplies as were reasonably necessary in the treatment of the injuries, but defendant's liability is limited to the reasonable or market

value thereof. H. & T. C. Ry. Co. v. Patterson, 27 Tex. Civ. App. 249, 65 S. W. 203; Wheeler v. Railway Co., 91 Tex. 356, 43 S. W. 876. The fact that plaintiff sent for the doctor, as testified by the former, and accepted his services, would, in the absence of some other agreement, create a legal liability to pay therefor on the part of plaintiff. Therefore we have services requested, rendered, and accepted, and evidence of the reasonable value thereof, which we deem to be all the law requires as to this character of proof. Therefore the fourth and fifth assignments are overruled.

[7] But the third assignment presents more difficulty. In this specification complaint is made that there is no evidence to sustain any recovery for nursing, and we are of the opinion that the contention is sound. While plaintiff pleaded that his wife nursed him during the 30 days in which he was confined to his room, and that her services were reasonably worth $2 a day, and while the evidence shows that both his wife and a neighbor did nurse him for a period approximating a month, and while Dr. Yater testified that it was necessary to have a nurse, yet there appears no evidence of record as to the reasonable or market value of such services. Since there is no complaint as to an excess in the verdict, it is urged that under the authority of the Supreme Court in Railway Co. v. Boozer, 70 Tex. 530, 536, 8 S. W. 119, 8 Am. St. Rep. 615, the error should not be held reversible. Perhaps, in any event, we would be authorized, under the authority of Railway v. Patterson, 27 Tex. Civ. App. 249, 65 S. W. 202, and Railway v. White, 32 S. W. 187, to permit a remittitur to the extent of $60 as a condition of affirmance; but, as in the opinion of the majority the judgment must be reversed under another assignment, this course is not open to us.

[8-10] In the seventh and last assignment error is urged to the action of the trial court in overruling and not sustaining appellant's amended motion for a new trial. In its motion defendant set up the alleged newly discovered evidence of Dr. L. W. Price, which was to the effect that before the plaintiff's horse became frightened and before said horse began to kick, the breeching of the harness fell down on the horse's legs; that at said time said horse began to stop and squat; that plaintiff struck said horse with the lines and kept endeavoring to urge said horse forward; that said horse then became frightened and finally began to kick; and that the cause of such fright and kicking was the fact of the breeching falling down on the legs of the said horse, and plaintiff's conduct in striking said horse and urging it forward.

It was further shown in said motion, and in the affidavit of Dr. Price attached thereto, that said Price was in a position where he had a full view of the surroundings, including defendant's track at and near said point, and that said witness saw no car of the defendant at or near said place, or pass said place at said time. It was further urged in the motion and averred in the supporting affidavits of appellant's claim agents, attorneys, and others, that diligent efforts had been made by the defendant and such claim agents, attorneys, etc., before trial to learn the names of all who had seen the accident, and it was further averred that in talking to the witnesses who, it was learned, had seen such accident, defendant's claim agents and attorneys inquired of them, and each of them, as to other parties who had seen such accident or who were in a position to see the same; that none of the witnesses talked to and inquired or disclosed the fact that Dr. Price had seen the accident, nor did the defendant's agents and attorneys know that he had seen said accident until after the trial, although they made diligent efforts to find out all the witnesses who had seen it.

Appellee urges that even though appellant has shown diligence in its efforts to discover this evidence presented in the motion for new trial, which diligence is denied, yet at most such testimony would be cumulative only in its nature, and therefore the court did not err in overruling the motion. It will be remembered that the accident occurred on the public square and naturally there were many witnesses to the transaction. Some eight or ten testified. It was a sharply controverted issue as to whether or not at the time of the accident the interurban car passed at all, or was even on the square. A number of witnesses, including the trainmen of the car that left Cleburne at 11 o'clock, and the one that left at 11:30, an express car, testified, in effect, that no such accident occurred at either time mentioned; that is, the trainmen testified that they saw no such accident and saw no horse cutting up; and others testified that during the time when the horse was misbehaving they saw no car. But it appears from an examination of the testimony of the witnesses that no witness testified that before the horse began to plunge and rear and appear frightened, the breeching dropped down on its legs. There was some testimony to the effect that during the time the horse was cutting up the breeching was down on its legs, but the testimony of no witness disclosed the fact that the breeching fell down before the horse began to cut up. Will Thompson testified that he knew the horse, that it was one which had belonged to his father, and that said horse had the habit of kicking and running away. Jim Thompson testified that he had owned the horse, that it was a bad kicking horse, and would "run and kick and run and kick some more, and if there were any half notes he would hit them, too." That the horse was what he considered a dangerous horse; "if the breeching or harness should happen to break, or drop down on him he would kick

and cut up and try to run. Every time any-thing would go wrong with him he would kick and run and kick." He further testified that he sold the horse to some one living in Alvarado, and that later he was brought back to Cleburne, and that plaintiff purchased him. The plaintiff testified, in part, as follows:

"Just guessing at it, I should say that I was about 3 feet from the track of the company when the horse began to get scared. The car was coming west on this track on Chambers street, or the south side of the square. The car was coming meeting me. My horse, as soon as he saw the car coming, began squatting, jumping, plunging, whirling, and trying to run in on the sidewalk, and I sat there and tried to hold him. Yes; I could see the motorman running the car; I could see his face and he was looking right down the track, and looked like he was looking directly towards where I was. I did not see any obstruction between myself and the motorman. He did not stop the car; he came on down the street, and my horse kept jumping, and I kept holding on to him, and just about the time the car passed, or was passing him, making the curve there, the horse turned loose to kicking. * * * Just as the car made the curve the horse kicked me on the right foot and glanced up my leg there."

It therefore appears that it was a very material question as to what caused the horse to be frightened, or to begin cutting up in the first instance; whether it was the approach of the car and at a time when the horse was in such close proximity to the track and to the approaching car that the motorman, in the exercise of ordinary care to keep a lookout along the track, would have discovered the perilous position in which plaintiff was placed and taken steps to stop the car, or whether the horse's fright and misbehavior was due to other causes, and was in no way enhanced or affected by the approach of the car, if the car was on the square at all at the time of the accident. In the opinion of the majority the newly discovered evidence being upon this crucial point, and no witness testifying having placed himself in the advantageous position held by Dr. Price, and sufficient diligence having been shown, the motion for new trial should have been granted, and the trial court's failure to sustain the motion will necessitate a reversal.

The writer is not thoroughly satisfied that such a course is required of us in the condition of the record as presented. The granting of a motion for new trial for newly discovered evidence is largely within the sound discretion of the trial court, and unless such discretion is shown to have been abused, the failure to grant such motion will not work a reversal. In the case of San Antonio Gas Co. v. Singleton, 24 Tex. Civ. App. 341, 59 S. W. 920, 922, the following announcement of the rule is quoted with approval, to wit:

"It is incumbent on a party who asks a new trial on the ground of newly discovered evidence to satisfy the court: First, that the evidence has come to his knowledge since the trial; second, that it was not owing to the want of due diligence that it did not come sooner; third,

that it is not cumulative; fourth, that it is so material that it would probably produce a different verdict if a new trial were granted"— citing Hatchett v. Conner, 30 Tex. 104; Railway Co. v. Forsyth, 49 Tex. 171.

In the cited case the opinion goes on to say:

"Whether the motion for a new trial met the above conditions was one largely addressed to the discretion of the trial judge. 'It is impossible to prescribe rules which shall afford a certain guide for the determination of every case; and, where the law does not furnish a rule, the application must of necessity be addressed to the discretion of the presiding judge. Having presided at the trial, having seen the witnesses and heard them testify his means of judging of the correctness of the verdict and the propriety of granting a new trial are superior to those afforded the appellate court by a mere statement of the evidence in the record. Hence, in revising the judgment of the district court refusing a new trial, it has been the uniform practice of this court not to reverse the judgment unless it clearly appears that the party applying has brought his application within those rules which entitled him to a new trial as a matter of law. The inquiry has been, not whether, upon the evidence in the record, it apparently might have been proper to grant the application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion.' Ables v. Donley, 8 Tex. 331; Railway Co. v. Marcelles, 59 Tex. 334."

As stated heretofore, the evidence was sharply controverted as to whether defendant's car was in sight at the time of the accident, some of defendant's witnesses testifying that they did not see the car at all, and defendant's employés testifying that they saw no such accident as claimed by plaintiff and plaintiff's witnesses occurred. Defendant's witness Jim Thompson testified that the horse driven by plaintiff would kick and try to run away when anything unusual occurred, at the approach of a car, *and when the breeching fell down on his legs.* The witness Will Thompson testified:

"When my attention was first attracted to this kicking, I hallooed to the gentleman in the back to turn loose and jump out. At the time I noticed the horse he was kicking *and the strap that held the breeching up was broken, and it was around his hind feet.* * * * I suppose I was 40 feet back in my store at the time I first noticed this horse kicking, but the first thing that attracted my attention was the noise, and I looked out and saw the horse kicking."

Defendant's witness Albert Smith testified:

"I was working on a man in the (barber) shop and had stepped to the washstand when my attention was first attracted. I glanced out at the window and I noticed the horse began to kick about the time I looked out there at the window. * * * At the time my attention was first attracted to the horse kicking, there was a man in the hack or wagon. He was sitting on the seat a part of the time, and after the horse began kicking, as best I could see, it looked like the horse kicked him and he fell overboard behind the seat."

The testimony of defendant's witness Will Thompson disclosed that during the mêlée he saw the breeching down on the horse's hind legs. No effort seems to have been made by appellant's attorneys, either during the examination of said witness, or of any other

witness, who saw the transaction, to find out at what time the breeching fell down. It does not appear from the statement of facts that any witness was questioned about this matter, nor was any inquiry made even of the plaintiff himself, though he was on the stand more than once, as to what time the harness broke. It appears to the writer, either that defendant's counsel did not attach any importance to this fact, or that they were not diligent in prosecuting the investigation when the testimony was adduced which would have put them on notice that upon further examination of the eyewitnesses present probably they could have discovered whether or not the breeching fell before or after the horse began to act as if frightened; or they could have secured such testimony from witnesses within a short distance of the courtroom. The affidavit of Dr. Price discloses that his office was upstairs on the south side of the square and overlooked the scene of the accident; that said office was over the dry goods store of Thompson & Atchley, the witness Will Thompson being one of the partners. Other witnesses who testified were in business houses adjoining or near to the place of Thompson & Atchley, and no reason is shown why, in the prosecution of diligent research and investigation to discover all eyewitnesses to the accident, the defendant's claim agent or investigator did not apply to Dr. Price to find out what, if anything, he knew about the accident. This was probably one of the considerations that induced the trial court to overrule appellant's motion for a new trial. In the opinion of the writer no reversible error is shown in said action of the court below.

In the opinion of the majority, the motion for new trial should have been granted, and its refusal will necessitate a reversal of the judgment.

Reversed and remanded.

BUCK, J., dissenting, as shown in opinion.