## ILLINOIS CENT. R. CO. v. JONES et al.

(Circuit Court of Appeals, Sixth Circuit.   July 5, 1899.)

No. 706.

1. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE OF CHILD.

Plaintiff, a boy 10 years and 5 months old, was struck and injured by a train on defendant's railroad at a public crossing in a town.   He was in a wagon with a man, and was driving, coming from the west towards the east, and the accident occurred on the easterly of four parallel tracks, on which the train, consisting of 18 or 20 freight cars, was backing from the north.   The view from the road towards the north was obstructed by a warehouse and by cars which stood on the other three tracks, leaving but a narrow and irregular opening through which to drive.   He was familiar with the crossing, and did not stop, look, or listen before driving through. It appeared probable from the evidence that he could not have heard the bell from the engine, and that he could not have seen the train until he passed the car on the adjoining track, which was about six feet away. There was evidence tending to show that it was the custom for the company to send a flagman from the train to the crossing when switching, and that it had given assurance to the city authorities that its trainmen would guard the crossing to protect the public from danger in switching, but on this occasion the flagman was on the top of a car at or near the rear end of the train.   *Held*, that the court could not say, as a matter of law, that plaintiff was guilty of contributory negligence in failing to stop, look, and listen, but that the question was one of fact for the jury, to be determined on a consideration of all the special circumstances, including his age, capacity, and understanding.

2. TRIAL—INSTRUCTIONS.

A court is not required to give special instructions, requested, which have been covered by its general charge, or which give undue prominence to particular facts by omitting reference to others of equal importance, or by repeatedly calling attention to such facts in different instructions.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This action was brought to recover damages for an injury received by Keeve Jones, a minor, on the 10th day of September, 1898.   The accident occurred in Fulton, Ky., where the tracks of the plaintiff in error, cross State Line street.   This highway is the dividing line between Kentucky and Tennessee, that part of the city south of this line being known as "South Fulton."   The minor is a colored boy, and at the time of the accident was 10 years and 5 months old.   He was at the time in a wagon with a colored man, who was employed to drive the team.   It was said, and apparently agreed, in the discussion of the case, that the driver was on the way for a load of sand, and that the boy was along for the purpose of showing him the sand.   The boy says he does not know whether the driver knew where the sand was or not, but does say the owner of the wagon told him to go and show the driver where the sand was.   This is flatly denied by the owner of the wagon, who says he did not know the boy was with the driver at all.   The decided weight of the evidence shows that when the wagon entered upon the crossing, and at the time of the collision, the boy was driving, with his face towards the driver, who was sitting on the south side or rail of the wagon bed.   The boy himself testifies that he was driving, and was talking to the negro man.   The defendant's flagman, however, is quite emphatic in the statement that the man himself, and not the boy, was driving at the time of the collision; and there is not a suggestion in the evidence of any change in drivers while on the crossing. The boy admits that he did not stop, look, or listen for the train, and says, if he had been looking, he could have seen it as soon as the man in the wagon

did. At this crossing there are four railway tracks,—a main line and three switch tracks,—and these switch tracks are used as a switch yard. The space between the different tracks is about six feet. The wagon was being driven from west to east, and just as it went upon the east track was struck by a freight train of 18 or 20 cars, backing south on the east, or elevator, track, and knocked across the line into Tennessee, the car running over the boy, and crushing both legs, necessitating amputation. The man who was with the boy jumped from the wagon, and escaped injury. The boy jumped, but was caught and run over by the cars. The railroad tracks run practically north and south, and State Line street east and west. The approach from the west is somewhat down grade, with a cut of about six feet; and just before entering upon the crossing there is a warehouse on the north side. This street is much used as a highway for travel, and the crossing much used for switching purposes. The crossing is very dangerous. The city council of Fulton had passed an ordinance requiring a watchman to be placed at this and one or two other crossings in the city, but had not required its enforcement on assurance from the superintendent of the plaintiff in error that all trains switching over the crossing would be guarded by the trainmen, and protection thereby afforded to the public. There was, at the time of the collision, no one on the crossing, charged with the duty of warning persons against coming on the tracks when a train was approaching, although it is clearly established that persons seeing the danger attempted to warn the boy by gestures and by shouting; and the decided weight of the evidence is that one or more servants of the company towards the rear part of the backing train did the same thing. It was a disputed question in the evidence whether the rear car was a box or flat car, and whether any of the employés of the company were nearer the south end of the backing train than the third car; one witness saying positively that the rear car and the one next to it were flat cars, or coal cars. The tracks west of the one on which the collision occurred were filled with standing cars on each side of the street, the trains having been cut so as to allow travel over the street. It was a disputed question whether these cars and the warehouse did not so obstruct the view of the boy, coming from the west, as to make it impossible to see the train backing until the wagon came out from behind the cars on the track next to, and immediately west of, the east track. Witnesses for the plaintiff in error virtually admit that under such circumstances, owing to the standing cars, the backing train or cars could not be seen, but say that persons on top of a box car of the backing train could be seen; and they state further that the flagman of the train, as well as another employé of the company, not connected with the operation of the train, were on a box car, and that this was the rear or south car on the backing train, which consisted of 18 or 20 cars.

The flagman testifies that when he saw the wagon coming he gave the signal to stop, and the other brakeman says this was communicated back to the engineer, who applied the brakes, and that the train commenced slowing up, and stopped about 35 feet from the crossing, south. Certain parts of the flagman's testimony may be given as follows: "Q. Were there any coal cars in this train? A. Yes, sir. Q. Where were they? A. My impression is, there were two box cars in the rear, and the coal cars were just north of them. Q. What was the purpose of your being on this rear car? A. I suppose it would be my place when we were backing up. Q. Which way were you looking as you were backing south? A. I was looking south, the way we were going. Q. Were you on the lookout ahead towards the south at the time of the accident, and before that? A. Yes, sir. Q. Did you see this negro boy on the wagon before he came to this elevator track? A. Yes, sir. Q. What did you do, if anything, when you saw him approaching the railroad track, while in the wagon? A. I hallooed for him to look out, and to stop. Q. Did you halloo loud enough for him to have heard you before he got in striking distance of the train, while passing on the elevator track? A. I suppose people heard me a hundred yards away. Q. Did Mr. Hay halloo to him also? A. Yes, sir. Q. Did you give any signal to any other brakeman upon the train, or to the engineer to stop the train; if so, what did you do? A. I flagged the engineer down, of course. I flagged the engineer, but I can't say the engineer could see me, but I gave the stop signal. Q. What kind of a signal is the stop signal?

A. When an object is on or across the track I gave signal by waving one or both. Q. Did you give this signal on this occasion? A. Yes, sir. * * * Q. When the boy came on the track, or so close to the track as to be struck by the passing train, how far was the rear car north of him? A. We were right at him. The team and wagon and cars struck crossing at same time. Q. After the car struck the team and wagon, how far did the train run before it stopped? A. One car length. Q. Had it begun to stop when it struck the wagon and team? A. Yes, sir; trying to stop all the time. Q. Was this on a level or down grade? A. A little down grade towards the south. * * * Q. Could a boy in a wagon on the west track see the moving train across these cars that were on the north side of the road? A. I don't know that he could see them or not, but he could see me by my being on the rear car. Q. Did you see any one else pass the crossing there as you were backing down? A. I saw people walking across, but he was the only one in a. wagon. Q. Did the boy seem to be looking out for a train? A. No, sir; his attention was attracted the other way, and he had his back to the team. Q. Was his back to the team when you first saw him? A. Yes, sir; he made no effort at all to leave the team. If he had gotten off when the driver did, or stopped the team, then he would not have gotten hurt at all. Q. Where was the driver on the wagon? A. He and the boy both seemed to be sitting on the seat. * * * Q. Didn't you say awhile ago that your train backed against the wagon just as the boy drove upon the track? A. No, sir; I said they met right on the track. They were going just about as fast as we were. Q. When the boy drove from behind these cars, was the team trotting or walking? A. Walking. But you understand that boy was not driving that team. Q. Who was driving it? A. The driver; the man who left the team was driving it. Q. Which way was the driver looking when you first saw him? A. To the best I could tell you, he was looking south. Q. Were there engines south of the dirt road? A. I do not know, sir. Q. Did the driver appear to be watching out for trains there? A. No, sir; if he had, he would have stopped; but he made no halt." In charging the jury the circuit judge said, it was in evidence by the testimony of one of defendant's witnesses that it was the custom of the company, when making a crossing, to send a flagman to flag the crossing when they went down, and to stay on the crossing, and warn the people away. The following occurs in the testimony of the conductor: "Q. Did you have any of your men at or near that crossing, on the ground, at the time of this accident? A. Well, my flagman told me that he would look out for the hind end. He is supposed to have been there." Such a habit was quite consistent with, if not required by, the promise made that the public would be protected at the crossing by the trainmen, instead of a watchman. There is a curve in the east track on which the train was backing, and the flagman says he was about 80 feet from the crossing when the boy was first observed. A freight car is 35 or 40 feet in length, and plaintiffs' witness Hay, when asked if the bell was ringing, says: "I could not say as to that. The engine was some twenty cars away. I don't know whether I could hear the bell from the rear car or not." The engineer says he was ringing the bell, and this is not expressly contradicted by any one, all or nearly all the other witnesses saying simply that they heard no bell or whistle. There was no whistle blown,—one witness giving as a probable reason that they were not allowed to blow the whistle in the city limits. The wagon was, of course, making noise. in crossing, as the evidence shows. The ends of the standing cars were left so close to the street in the cut, and so uneven, that in driving through it was necessary to direct the team to the right and then to the left, following a "zigzag" course. The boy was well acquainted with the crossing, and was reasonably intelligent for one of his age, but the suggestion that he was unusually bright hardly finds support in the record. There was a verdict against the defendant for $2,000, on which judgment was pronounced, and thereupon this writ of error was sued out.

Joseph E. Jones and C. G. Bond, for plaintiffs.
Charles M. Ewing, for defendant.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The denial, by the court, of the motion made by the defendant at the close of the whole of the evidence, to direct a verdict in its favor, and the refusal to give certain special instructions requested, are assigned for error, and constitute the grounds relied on for reversal in this court. In view of all the conditions of the entire situation at the time and place of the accident, with a conflict in the evidence over the material facts, the question of the defendant's negligence was obviously one for the jury. Reference to some of the leading cases is sufficient without a review in detail. Railway Co. v. Farra, 31 U. S. App. 307, 13 C. C. A. 602, and 66 Fed. 496; Railway Co. v. Steele's Adm'x, 54 U. S. App. 550, 29 C. C. A. 81, and 84 Fed. 93; Fletcher v. Railroad Co., 168 U. S. 135, 18 Sup. Ct. 35; Warner v. Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68; Railroad Co. v. Gentry, 163 U. S. 358, 16 Sup. Ct. 1104. Indeed, the request for a peremptory instruction, and the argument supporting it, do not proceed upon the ground that the case was not one for submission to the jury upon the issue of negligence. The contention is that the undisputed evidence established contributory negligence on the part of the injured boy, and that upon this ground the case should have been withdrawn from the jury. Stated more specifically, the insistence is that the uncontradicted evidence shows that the boy, Jones, possessed capacity and intelligence sufficient to understand and appreciate the dangers of the crossing, with which he was familiar, and that he knew the work of switching cars might be going on at any time; and, possessing such knowledge, that he failed to stop and look and listen before going upon the crossing. Under such circumstances as these, counsel for the plaintiff in error say:

"The failure of a party to stop, look, and listen before crossing a railroad track is negligence per se, and is a question for the court. If a party is hurt by reason of his negligence in this regard, he cannot recover."

But, although the issue of contributory negligence alone is now presented for decision, this question is so inseparably connected with that of the defendant's negligence that the former issue cannot be discussed and disposed of without repeated reference to the latter. The attempt to do so would involve confusion. Whether the plaintiff is chargeable with contributory negligence is a question depending largely on the position in which he is placed, and the danger to which he is subjected by the negligent act or omission of the defendant. It has been said:

"Contributory negligence, then, is negligence in not avoiding the consequences arising from the negligence of some other person when means and opportunity are offered to do so."

Whether a closer definition might be given, this is very suggestive of what is met with practically in the cases. It is only after negligence on the part of the defendant to the suit is established that the question of contributory negligence is reached for determination by the court or jury. It is obviously true, and has been often decided, that the standard of ordinary care and caution varies in different situations, always depending, beyond certain general prop-

ositions, upon the special facts of the case. In Railway Co. v. Whitcomb, 31 U. S. App. 385, 14 C. C. A. 183, and 66 Fed. 915, Judge Taft said:

"But the standard of ordinary care is not absolute. It varies according to the circumstances, and according to the possible or probable danger which may arise from the use of the instrument. The court did not tell the jury that the street-railway company was obliged to use the highest degree of care, but only a proper degree of care considering the possibility of danger from the instrument it was operating."

The degree of care and diligence exercised must be commensurate with the danger. If a grade crossing is peculiarly dangerous, a corresponding increase of caution is required. Railway Co. v. Farra, 31 U. S. App. 316, 13 C. C. A. 602, 66 Fed. 496. This rule is especially applicable to one whose act or omission has brought about the danger. A railway crossing at grade on a public and much-traveled highway is a place of great danger. Such crossings are a source of almost continual collisions, and of much shocking injury and loss of human life. This has been often pointed out by the courts, and is a matter of common knowledge. The use of these level crossings has been regulated by much legislation in this country and in England. When such a crossing exists on a public highway within the limits of a town or city, in a thickly-settled place, with the crossing largely used, there is, perhaps, no place of greater danger incident to the operation of a railway. In Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, the injury was sustained at the intersection of a railroad and a county road, where there was practically very little travel. In regard to grade crossings in general, the court said:

"The right of a railroad company to the use of its tracks for the movement of engines and cars is no greater in the eye of the law than the right of an individual to travel over a highway extending across such tracks. The former is granted, subject to the condition, necessarily implied, that it shall be so used as not unreasonably to interfere with or abridge the latter. The obligation to use one's property in such a manner as not to injure that of others rests equally upon corporations and individuals. The duty of railroad companies whose tracks cross public highways at grade to give warning to those traveling upon them has been under consideration in many adjudged cases. When the subject is regulated by statute, it may not be difficult, in a particular case, to determine whether the railroad company has performed its duty in that regard to the public. If there be no statute prescribing in what mode the necessary warning shall be given when a train of cars approaches a public highway that crosses a railroad track at grade, the question of negligence must be determined by the special circumstances of each case. In some localities in thickly-settled communities greater vigilance and more safeguards are required upon the part of the railroad company than would be necessary in other localities. What would be due care in one locality might be negligence in another. A very high degree of caution and circumspection is required under some circumstances."

In case of injury at a private crossing, where plaintiff had a right to be, and in regard to which it was the duty of the defendant to exercise reasonable care and caution for his protection, Judge Wallace said:

"It was right to instruct the jury that he had a right to assume the defendant would use more care, in view of the obstructed condition of the crossing, than ordinary. The law will never hold it imprudent in any one to act upon the

presumption that another, in his conduct, will act in accordance with the rights and duties of both." Thomas v. Railroad Co., 8 Fed. 732.

In Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, the suit was the result of a level-crossing accident on a street in the city of Detroit. In respect of the mutual duties of the railroad company and the traveler in the use of such a crossing the court charged the jury as follows:

"So, if you find that, because of the special circumstances existing in this case,—such as that this was a crossing in the city, much used, and necessarily frequently presenting a point of danger, where several tracks run side by side, and there is consequent noise and confusion and increased danger; that, owing to the near situation of houses, barns, fences, trees, bushes, or other natural obstructions, which afforded less than ordinary opportunity for observation of an approaching train, and other like circumstances of a special nature, it was reasonable that the railroad company should provide special safeguards to persons using the crossing in a prudent and cautious manner,—the law authorizes you to infer negligence on its part for any failure to adopt such safeguards as would have given warning, although you have a statute in Michigan which undertakes by its provisions to secure such safeguards in the way the statute points out. The duty may exist outside the statute to provide flagmen, or gates, or other adequate warnings or appliances, if the situation of the crossing reasonably requires that; and of this you are to judge, and it depends upon the general rule that the company must use its privilege of crossing the streets on its surface grade with due and reasonable care for the rights of other persons using the highway, with proper care and caution on their part. So, if you find that the train hands kept no proper lookout, and managed the train without due caution and reasonable care, you will be authorized to infer negligence on the part of the company as one of the facts established in the case."

One of the chief assignments of error was on this part of the charge. The court, however, through Mr. Justice Lamar, said:

"That this instruction is in harmony with the general rule of law obtaining in most of the states and at common law, we think there can be no doubt. The general rule is well stated in Railway Co. v. Kuhn, 86 Ky. 578, 589, 6 S. W. 441, 445, as follows: 'The doctrine with reference to injuries to those crossing the track of a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country, so what is reasonable care and prudence must depend on the facts of each case. In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country, where but few persons passed each day.'"

The cases thus cited, without reference to others, give a correct and sufficiently full exposition of the law applicable to these level-crossing cases, which have become a large and marked group of cases standing out from the rest, just as the turntable cases constitute a class understood in practice following the lead of Railroad Co. v. Stout, 17 Wall. 657.

We now proceed to the question of contributory negligence, and upon this branch of the case the contention that the failure on the part of a traveler to stop, look, and listen before going upon a highway crossing is, as matter of law, contributory negligence, is not sustainable, even in the case of an adult. This question has been ruled otherwise by this court in more than one case. Railway Co. v. Whitcomb, 31 U. S. App. 374, 14 C. C. A. 183, and 66 Fed. 915; McGhee

v. Kennedy's Adm'r, 31 U. S. App. 366, 13 C. C. A. 608, and 66 Fed. 502; Railway Co. v. Farra, 31 U. S. App. 307, 13 C. C. A. 602, and 66 Fed. 496. In Railway Co. v. Whitcomb, Judge Taft, speaking for this court, said:

"First. The court was asked to charge the jury that it was the absolute duty of Whitcomb not only to look and listen for the coming of the car, but also to stop, look, and listen. It certainly is not the law that persons crossing street-railway tracks in a city in a vehicle are obliged to stop before crossing, unless there is some circumstance which would make that ordinarily prudent. We have already held in the cases of Railway Co. v. Farra, 31 U. S. App. 316, 13 C. C. A. 602, and 66 Fed. 496, and McGhee v. Kennedy's Adm'r, 31 U. S. App. 366, 13 C. C. A. 608, and 66 Fed. 502, that it is not the absolute duty, as matter of law, for one crossing a steam-railway track to stop, look, and listen, but that the necessity for stopping is to be determined by the circumstances, and is usually a question to be left to the jury; and so the court below in this case treated it. The rule cannot be stricter in respect to crossing a street railway than in crossing a steam railroad. The cases relied upon are chiefly Pennsylvania cases. In that state the supreme court has adopted a rule of law requiring every person to stop, look, and listen before crossing the railroad track. This rule is not followed in other states, and certainly is not the law in the federal courts."

In Railway Co. v. Ives the action was to recover damages for the alleged negligent killing of the plaintiff's intestate at a street crossing in the city of Detroit, with which deceased was familiar, and which he had used for a number of years. He resided on a farm a few miles out of the city of Detroit, and it was his custom to make one or more trips to the city every day. In going to the city he traveled on a much-used highway, known as the "Holden Road," which, in the city, became a street running east and west. Besides the defendant's road, there were two other parallel roads coming from the southwest which curved away from one coming on the Holden Road. For a considerable distance along the right side of the road going into the city there were obstructions to the view of the railroad by houses and by trees, so that it was only when the traveler was within 15 or 20 feet of the track that he could obtain an unobstructed view of the track to the right. On the morning of the accident, plaintiff's intestate and his wife were driving down the road into Detroit in a buggy with the top raised and curtains removed or raised. They stopped opposite one of the houses for a few minutes, presumably to listen, and while there a train on one of the roads passed by, going out of the city. Soon after it passed, and while the noise made by the train was still distinct, they drove on. Just as they reached the defendant's track, and while apparently looking at the train that had passed, they were struck by one of the defendant's trains coming from the right, and instantly killed. This train was a transfer. There was a conflict in the evidence as to whether the whistle was blown for this crossing or the bell rung. At the close of the evidence the defendant requested certain instructions to the jury, which, if given, would have required the jury to return a verdict in its favor. It was insisted that the evidence in the case given by plaintiff's own witnesses showed that deceased was himself so negligent that, but for his contributory negligence, the accident would not have happened, and that the court should, as matter of law, have so ruled; but the court said:

"To this argument several answers might be given, but the main reason why it is unsound is this: As the question of negligence on the part of the defendant was one of fact for the jury to determine under all the circumstances of the case, and under proper instruction from the court, so, also, the question of whether there was negligence in the deceased, which was the proximate cause of the injury, was likewise a question of fact for the jury to determine under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat this action,—or, perhaps, more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person under similar circumstances,—was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other."

See, also, Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, where exactly similar doctrine is announced in respect to the question of contributory negligence, and the cases of Improvement Co. v. Stead, 95 U. S. 161, and the Ives Case, reaffirmed.

In Railway Co. v. Farra, the leading facts were that a woman was, at the time of the accident, driving on a turnpike in a two-seated vehicle. She had two children with her,—one, an infant, upon her lap; the other, a little girl, seated next to her. They were on the back seat. The railroad and turnpike approached the crossing through considerable cuts. Something like four hundred feet away, the turnpike began a descent which continued to the crossing. The last point from which one on the turnpike could see the railroad was four hundred feet from the crossing. Owing to the cuts through which the turnpike and railroad approached the crossing, the view of the railroad was somewhat obstructed until close to the track. This obstruction was by weeds suffered to grow upon the right of way, and obstructed the view to an extent both upon the right and left. The side curtains to the carriage were up. The lady stated that she had no view of the track until she was on it; that she looked to the south, because at that hour no train was expected from the north, and, seeing no train, she looked the other way, when she saw an engine so close that it was impossible to cross over. She stated that she heard no signals as she approached the crossing. The train was a special passenger from the north, running at a high rate of speed. The lady did not stop before going upon the track, though she said she listened. She received severe injuries in the collision. The court refused to charge, as requested, that, if the view was obstructed, it was her duty, before going upon the track, to stop and look and listen, and that, if she failed to do so, she was not entitled to recover. On writ of error it was held by this court that it was for the jury to determine, under the evidence, whether the failure to stop was an omission of that care and prudence which an ordinarily careful person should have exercised under like circumstances, and that the case was properly submitted to the jury, and that the judgment in favor of the plaintiff should be sustained. The law applicable to this question of contributory negligence in cases arising out of these innumerable collisions at grade crossings was considered and restated in this case.

McGhee v. Kennedy's Adm'r, 31 U. S. App. 366, 13 C. C. A. 608, and 66 Fed. 502, is a case in which the action was to recover damages for the death of a person killed while crossing a railroad track at the intersection of a turnpike within the corporate limits of a town, but outside of the more densely settled part of the town. The railroad, 300 yards before reaching the crossing, made a curve in a cut. The turnpike was below the level of the road, and reached the crossing on a grade. Whether the view of the train by a traveler was obstructed in consequence of this cut was in dispute. From a point 20 feet south of the crossing the track could be seen about 40 feet eastwardly. West of this crossing the track was straight and level, and in open ground, for at least half of a mile. Deceased was in a wagon, driving northwardly on the turnpike in the direction of the crossing. A colored boy was sitting on the seat with him. As they approached the crossing, a work train passed. Deceased had stopped the wagon in front of a house 40 feet from the crossing, and, as the work train passed, moved slowly towards the crossing. The team was upon the track when a second train struck the wagon, killing the deceased and injuring the boy. There was about one-sixth of a mile between the two trains. The boy was looking at the train which had passed, and said, just before the team went upon the track he saw the second train, and called to the deceased to look out. There was testimony tending to show that there was no whistle or ringing of the bell on the second train. The daughter of a woman living in a house, 40 feet from the crossing, testified that when the wagon was about 20 feet from the crossing she saw the man look around at the train as it was approaching the crossing, and thought he would stop, but that he whipped up his horses. She further testified that, if the colored man had tried to stop his team when she saw him look at the approaching train, he could have avoided the accident easily, but that he appeared to her to be trying to cross the track before the train reached him. It was adjudged by this court, on writ of error, that, as the deceased might have reasonably presumed that in the 40 yards which he had to go to reach the track another train would not pass the crossing, this circumstance would prevent the court from holding as a matter of law that his failure to look was contributory negligence, and that the question of contributory negligence of the deceased was one for the jury. It was said that the presumption was that, if deceased had seen the train coming, he would not have attempted to cross when so far from the track that he could not reach it with his wagon wheels before the coming of the train, and that the plaintiff was entitled to have the jury weigh the credibility of the evidence of the daughter in the light of the circumstances. See, also, Railway Co. v. Steele's Adm'x, 54 U. S. App. 550, 29 C. C. A. 81, and 84 Fed. 93.

These cases illustrate the law of negligence and contributory negligence in its application to grade-crossing accidents, and to the ordinary case in which the plaintiff suing and charged with contributory negligence is a person of full years and mature judgment. The rules declared in these and similar cases, like most other doctrines in the law of negligence, are founded upon the care to be expected of a pru-

dent and careful adult under the given circumstances. These doctrines, as we shall see, are modified in their application to children of tender years. It follows that, besides the usual question of contributory negligence, the case at bar involves the further inquiry how far the law controlling the ordinary case with a person of full age as plaintiff is applicable in view of the circumstance that the plaintiff in this case is a child of tender years. Before dealing more closely with these questions, the issues may be more sharply defined and better understood by stating that the case is not one between a railroad company and a trespasser in its own private yards, as in Railroad Co. v. Cook, 31 U. S. App. 277, 13 C. C. A. 364, and 66 Fed. 115, nor between the company and one using its own yards by implied license, as in Felton v. Aubrey, 43 U. S. App. 278, 20 C. C. A. 436, and 74 Fed. 350. The case is clearly that of a grade crossing on a public highway, where the rights of the general public and the railroad company are mutual and reciprocal; and, while priority in the right to cross belongs to the company, this is, as we have seen, upon condition that reasonable care will be exercised, proportionate to the danger, to protect the public by proper warning signals, and such other precautions as the danger of the situation, whether ordinary or unusual, may require. Railway Co. v. Steele's Adm'x, 54 U. S. App. 550, 29 C. C. A. 81, and 84 Fed. 93; Improvement Co. v. Stead, 95 U. S. 161; Railway Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703; and 8 Am. & Eng. Enc. Law (2d Ed.) 386–388. At such a crossing the traveler is, we repeat, in the exercise of a legal right, and stands on equal terms with the railroad in the use of the crossing, subject only to this precedence in the right to cross first, and the duty of the traveler to stop on proper signal to allow the train to do so.

We now come back to the question of contributory negligence raised by the defendant's motion for a peremptory instruction. As fully appears from the cases already cited, the existence of negligence or contributory negligence in the ordinary case is not a question of law, but one of fact, to be settled by the jury. This has often been declared in various forms. In Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, Mr. Justice Brewer, speaking for the court, upon this subject said:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will draw different conclusions from them."

It will be recognized at once that the rule applies with special force to the issue of contributory negligence in a case like the one at bar, where, in addition to other elements, there is involved the question of sufficient mental capacity and judgment on the part of the child to properly understand and appreciate the character and extent of the danger, and to exercise for his own protection such care and watchfulness as may be commensurate with such a danger. It may be remarked here in passing that the burden of establishing the fact of contributory negligence was on the defendant. Railway Co. v. Steele's Adm'x, 54 U. S. App. 550, 29 C. C. A. 81, and 84 Fed. 93;

Railway Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104; Wakelin v. Railway Co. (1887) 12 App. Cas. 41. In dealing with such an issue as this, the jury, besides all the special circumstances, are to consider this question of maturity and capacity. The law discriminates between children and adults in the degree of caution and care required of each. In Railway Co. v. McDonald, 152 U. S. 281, 14 Sup. Ct. 626, contributory negligence on the part of a boy 12 years of age was relied on as a defense. In reference to that issue, Mr. Justice Harlan, speaking for the court, said:

"The question of negligence upon the part of an infant must be determined with reference to his age and to the situation in which, at the time of the injury, the circumstances placed him. The authorities cited—indeed, all the adjudged cases—agree, as declared by the court of appeals of New York, that in applying the rule that a person who seeks to recover for a personal injury sustained by another's negligence must not himself be guilty of negligence that substantially contributed to the result the law discriminates between children and adults, the feeble and the strong, and only requires of each the exercise of that degree of care to be reasonably expected in view of his age and condition. Reynolds v. Railroad Co., 58 N. Y. 248, 252. And so, as declared by the same court, persons in sudden emergencies, and called to act under peculiar circumstances, are not held to the exercise of the same degree of caution as in other cases. Thurber v. Railroad Co., 60 N. Y. 326, 336. Even in the case of an employé of a railroad company claiming to have been injured as the result of the company's negligence, this court has said that in determining whether he has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might be reasonably expected, regard must always be had to the exigencies of his position,—indeed, to all the circumstances of the particular occasion."

The rule thus declared was distinctly enunciated in earlier cases. Railroad Co. v. Stout, 17 Wall. 657; Railroad Co. v. Gladmon, 15 Wall. 406. The result of the adjudged cases has been quite carefully stated as follows:

"While the test of ordinary care is applied throughout the entire law of negligence, yet, as we have seen, it is ordinary care under the circumstances and conditions. Thus, what would be ordinary care for one person might be culpable negligence in another; and conduct which, on the part of a person of full age and average capacity, would be held contributory negligence as a matter of law, might be ordinary care in a child of tender years. Hence it follows that children so young as to be non sui juris cannot be guilty of contributory negligence. And children who have attained an age where they are not wholly irresponsible are not required to exercise the same care and prudence that would be demanded of an adult similarly situated, but only the care of a child of equal age and ordinary childish care and prudence. And even when a child has reached years of discretion, and become, as a matter of law, responsible for his conduct, no higher degree of care will be exacted of him than is usually exercised by persons of similar age, judgment, and experience." 7 Am. & Eng. Enc. Law (2d Ed.) pp. 405–407.

In Felton v. Aubrey, 43 U. S. App. 285, 286, 20 C. C. A. 436, 438, and 74 Fed. 350–352, the law upon the subject as now established by the overwhelming weight of authority was declared by this court through Judge Lurton in language as follows:

"There was a very sharp conflict in the evidence upon the vital question as to whether the defendant in error appeared on the track in front of the train, or whether from the side of the road he undertook to grab and climb up on a car as it passed him. If the evidence of the injured boy is credited, he did not undertake to climb upon the cars, but was overtaken as he was crossing the track in front of the train. In this aspect of the case, it became very material

to determine whether the defendant in error was himself in the exercise of ordinary care and caution. He says, in his own evidence, that he neither saw nor heard the approaching train, and that he did not look to see if anything was approaching. It was broad daylight. There was nothing to prevent him from seeing if he had looked. Clearly, on this admission, a responsible adult would have been guilty of such gross negligence as to defeat any recovery, unless the railway company, after discovering his situation in time to have avoided injury to him, used no exertion to ward off the danger. The defendant in error was an infant of nine years, and it would be unreasonable to require from an infant so high a degree of care and watchfulness for his own safety as would be ordinarily exercised by a person of more mature years and sounder discretion. From an infant of tender years less discretion and intelligence are required than from an adult. The degree of care and caution to be required from a child, circumstanced as this boy was, would depend upon his age, experience at such places, and capacity; and each case must depend upon the facts and circumstances of that case. Railroad Co. v. Gladmon, 15 Wall. 401; Railroad Co. v. Stout, 17 Wall. 657. The care and prudence to be required of a boy nine years of age are those to be reasonably expected from such a boy, or from boys of that age, looking to their habits and knowledge of the danger to be apprehended."

The general rule as to contributory negligence has never been applied strictly or inflexibly to young persons, either in this country or in England, and allowance has been made for inexperience and infirmity of judgment. This modification of the rule has the merit of common sense and humanity, while a different doctrine would be repugnant to natural justice. As Dr. Wharton says: "The diligence and care required are in proportion to the lights of the person judged." Whart. Neg. 322. Among the English cases we may refer to Crocker v. Banks, 4 Times Law R. 324, and Jewson v. Gatti, 2 Times Law R. 341.

In Price v. Water Co., 58 Kan. 551, 50 Pac. 450, the facts were that the water company maintained upon its grounds deep reservoirs of water, to which small boys, to its knowledge, resorted for fishing and play, and the company took no reasonable precautions to prevent accidents to them while at and about the reservoirs. A bright, intelligent boy, 11 years of age, going to the reservoirs for fishing and for play, was drowned. These reservoirs were inclosed with a barbed wire fence 10 to 20 wires high. A watchman and custodian of the grounds was employed by the defendant. Boys were in the habit of climbing over stiles from the outside into the grounds. The boy went to the reservoirs without the consent and knowledge of his parents. This boy had been warned by a companion of the danger of going to the reservoirs, and his parents had also frequently warned him of the danger. The parents brought suit to recover damage. The case involved questions of negligence and contributory negligence. With respect to the issue of defendant's negligence, Doster, C. J., giving the opinion of the court, said:

"The principle involved is the same as that upon which those actions known as the 'Turntable Cases' have been resolved, and in which it has been held, with few exceptions, that the maintenance, in an unguarded manner, of a dangerous apparatus for the shifting of locomotives, attractive to children residing or accustomed to playing near by, constitutes negligence upon the part of the companies. In one of these cases it was quite well remarked by Mr. Justice Valentine: 'Everybody knowing the nature and instincts common to all boys must act accordingly. No person has a right to leave, even on his own land, dangerous machinery calculated to attract and entice boys to it, there to be in-

jured, unless he first take proper steps to guard against all danger; and any person who does thus leave dangerous machinery exposed without first providing against all danger is guilty of negligence. It is a violation of the beneficent maxim, "Sic utere tuo ut alienum non lædas." It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored, as numerous cases which we might cite would show.' Railway Co. v. Fitzsimmons, 22 Kan. 691."

In relation to the question of contributory negligence the court used this language:

"The second question, viz.·the contributory negligence of the deceased, can be shortly disposed of. What might be negligence in an adult will not, of necessity, be negligence in a child. Persons of tender years are not held to the same degree of care that a mature and experienced person is required to exercise. As remarked in Railway Co. v. Fitzsimmons, supra: 'Boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own natures,—instincts common to all boys. In many cases where men, or boys approaching manhood, would be held to be negligent, younger boys, and boys with less intelligence, would not be. And the question of negligence is in nearly all cases one of fact for the jury whether the person charged with negligence is of full age or not.' This view of the law we believe to be taken by all the courts."

It was accordingly ruled that the question whether the boy was negligent was for the determination of the jury, and not for the court. In Young v. Clark, 16 Utah, 42, 50 Pac. 832, the action was to recover damages for personal injuries sustained by the plaintiff, a child 12 years old, by being run down and struck by a locomotive attached to a passenger train, operated by the defendant, while the plaintiff was crossing the defendant's bridge spanning the Ogden river, situated one-half of a mile north of the passenger depot in Ogden City. The evidence tended to show that for a number of years it had been the custom of people residing on the north side of Ogden river to use the defendant's bridge and railroad track as a footpath to and from the city, and that it was so used by children attending school. About 5 o'clock p. m., on a clear day, plaintiff was·sent on an errand by her grandmother, and her brother, nine years of age, was sent with her. At the end of the bridge, knowing it was about train time, the little girl looked and listened, and, hearing no train, started north, crossing the railroad bridge. There was no hand rail, foot bridge, or planking on the bridge; nothing except the ties to walk upon. When about half way across, she saw an engine, with a train, coming towards her from the north. She placed the boy on the end of a projecting beam of the bridge, outside of the rails for safety, and then undertook to keep out of the way of the train by running, and when within ten feet of the south end slipped and fell, and was struck in the left side by the pilot of the engine, and was seriously injured. She knew the train passed over the bridge each way all hours of the day and night. She had frequently crossed the bridge, and knew how long it took, and was familiar with the time the trains usually crossed the bridge. There was a curve in the track about 2,200 feet from the bridge, and from that point to the bridge the view of the track was open, so that the engineer might have seen the little girl on the bridge; but the engineer testified that two men were walking on the track towards the engine, and between the engine and bridge, and intercepted what

would otherwise have been an open view of the bridge after rounding the curve. There was judgment for the plaintiff, and it was decided by the supreme court that the questions of negligence and contributory negligence were proper for the jury. With respect to the defense of contributory negligence the court said:

"The age of the plaintiff was a proper matter for the consideration of the jury under the facts in this case. The care to be used in such cases has relation to the situation and condition of the parties, and varies according to the exigencies which may require vigilance and attention, and when contributory negligence is charged against a child he can only be held to that degree of care which may be reasonably expected from one under the same conditions of sex, intelligence, age, and judgment. The rule to be applied to an adult is quite different from that to be applied to a child of tender years. Of a child of twelve years less discretion is required than from one much older. The degree of care to be exercised must depend upon the age, knowledge, experience, and capacity of the child; and this should be determined in each case by the circumstances surrounding it under the evidence, and, in cases where contributory negligence is a question for the jury, as it was in this case, it is the province of the jury to judge of her capacity and ability, and the manner in which she used the same on the occasion in question,"—citing Railroad Co. v. Gladmon, 15 Wall. 401, and numerous other cases.

In Traction Co. v. Scott, 58 N. J. Law, 682, 34 Atl. 1094, while a car of the company was stopping at a street crossing to receive and discharge passengers, a boy of the age of 7 years and 8 months, while walking across the street from behind the standing car, was struck and killed by another car of the defendant, passing from the opposite direction. There was evidence which tended to prove that the boy's view of the approaching car was obstructed until he had passed the standing car, and that no bell was sounded by the approaching car, and that the boy did not look for the approaching car before entering upon the track, where he was struck almost immediately upon stepping upon it. The trial judge refused motions to nonsuit and to direct a verdict on the alleged grounds that there was no proof of negligence, and that contributory negligence was established on the part of the plaintiff's intestate. Both motions were overruled, and the case submitted to the jury for its determination. On error to the supreme court of New Jersey it was held that the judge committed no error in this ruling. Hendrickson, J., after disposing of the first ground of the contention for a nonsuit, and reaching the question of contributory negligence, said:

"There is another element to be considered as affecting juridical action upon the question of contributory negligence in this case, and one that, I think, clearly makes it a question for the jury alone, and that is the fact that the plaintiff's intestate was a boy of tender years. He was described as a bright boy, but he was so young that naturally his powers of reason and judgment could be but partially developed. He had not passed far beyond the age of seven years, the period below which children have, in many cases, been held to be non sui juris as a matter of law, and hence not chargeable with contributory negligence under any circumstances. Where there is a question whether the child is of sufficient age and discretion to be capable of some care for his own safety, the question of his capacity, and its degree, is for the jury. 2 Thomp. Neg. 1182. In an action, by a child eight years old against an electric street-railway company for injuries caused by being run over by defendant's car, the question whether plaintiff was sui juris was held to be a question for the jury. Stone v. Railway Co., 21 N. E. 712, 115 N. Y. 104, followed Bennett v. Railroad Co. (Sup.) 37 N. Y. Supp. 447. And when a child has reached the

age of discretion, and is considered sui juris as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised by persons of similar age, judgment, and experience. And whether that degree of care and caution has been exercised by the child in a given case is usually, if not always, a question of fact for the jury. 4 Am. & Eng. Enc. Law, 1, 46, and cases cited."

In Railroad Co. v. Webster, 6 App. D. C. 182, the action was by a boy to recover damages for injuries suffered in an accident which occurred at the intersection of a railway and a street known as "Maryland Avenue," in Washington City. The company, at the time, maintained and used on the avenue four or five railroad tracks. The plaintiff was endeavoring to cross the track of the railroad between Eighth and Ninth streets, when he was run over by a passenger train on the north track, and severely injured. Plaintiff testified that when approaching the railroad tracks he saw the smoke of a train coming from the direction of Long Bridge, but thought he could get across the track; that a number of freight cars were standing on the track, extending eastwardly; that he turned to the right, and ran through an opening between the cars; that he was looking at the train coming from the Long Bridge, and did not observe any other train, but, after reaching the other side of the car, he saw a passenger train coming from the depot, which was so close that he could not have turned back, because the freight train was also almost on him; that he could not, before passing through the opening between the standing cars, see the train coming from the east (the depot) because of the cars obstructing his view; that the next thing he remembered was both engines passing; that he could not say which train ran over his foot. At the close of the evidence defendant asked an instruction from the court that the verdict of the jury should be for the defendant. The request was refused. It is stated in the opinion of the court that the boy was less than 12 years of age, while in the argument for appellant it is said that he was 12 years old, and bright and active. There was no question but that he was accustomed to trains and to these tracks, and was somewhat in the habit of jumping on and off trains and of "stealing rides." The court of appeals said, in substance, that as there was no denial of the fact that there were freight cars standing on the track between Ninth and Eighth streets, and that if, as was insisted, they were left standing there unnecessarily, and that such standing cars did prevent a view of the moving train that inflicted the injury upon the plaintiff, which would not have occurred but for such obstructed view of the moving train, then it was clearly right and proper that those questions should have been submitted to the jury for their determination, as showing negligence on the part of the defendant. In regard to this point, as well as the question of contributory negligence, Mr. Chief Justice Alvey, announcing the judgment of the court, said:

"The unauthorized act of allowing the cars to stand on the tracks in one of the thoroughfares of the city, which all persons have a right to use, and where such standing cars might be the means of exposing people to danger, cannot be otherwise regarded than an act of negligence, if not as a positive nuisance. Hence the court below was quite right in rejecting the seventh and eighth prayers of the defendant for instruction, which requested the court to declare to the jury that the allowing the cars to stand on the tracks in the avenue be-

tween Eighth and Ninth, and Ninth and Tenth streets could not be considered as evidence of negligence on the part of the defendant. Under the circumstances in proof, the court could not withdraw the case from the jury. The court could only determine the question as matter of law, whether there was any evidence tending to prove the negligence complained of; and, if such evidence was found to exist, it was the duty of the court to submit it to the consideration of the jury. Where a given state of evidence is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury: but where the evidence is such that all reasonable men must draw the same conclusion from it, the question of negligence is one of law for the court. Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679. Or, as said by the court in a subsequent case: 'The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.' Gardner v. Railroad Co., 150 U. S. 349, 361, 14 Sup. Ct. 140, 144. Applying the principles just stated, it would seem to be clear that the case was fairly and properly submitted to the jury, and that there was no error in refusing the first prayer of the defendant. With respect to the question of contributory negligence of the plaintiff, that was also properly submitted to the jury. As matter of defense, it was incumbent upon the defendant to establish such contributory negligence, unless shown in the proof produced by the plaintiff. The plaintiff, at the time of the injury received, being a boy under twelve years of age, as shown by the proof, could not be expected to exercise the same degree of care and caution to avoid danger to himself as would be exacted of an older or an adult person under like circumstances. The question in all such cases is whether the child has exercised such care as was reasonably to be expected from a person of his age and capacity, and the mere fact that he was old enough to know the probable consequences of the act which caused his injury will not conclusively determine that he was negligent in a degree to defeat his right to recover, since it is not to be expected that a child will exercise the measure of prudence or caution in avoiding danger that we expect of an adult. Railroad Co. v. Gladmon, 15 Wall. 401; Railroad Co. v. Stout, 17 Wall. 657, 660; Plumley v. Birge, 124 Mass. 57."

See, also, Railroad Co. v. Cumberland, 12 App. D. C. 598, where an exactly similar rule was laid down and applied, the plaintiff in that case being again a little boy over 12 years of age at the time of the accident, and injured on the railroad track of the same company on Maryland avenue in the city of Washington.

In the Aubrey Case, supra, the boy injured was 9 years old. The injury was sustained in broad daylight by a railroad train at a place where the track of the railway crossed an open common at a high embankment; and the boy testified that he did not undertake to climb upon the cars, but was overtaken as he was crossing the track in front of the cars; that he neither saw nor heard the approaching train, and that he did not look to see if anything was approaching. It was held by this court that, if the boy was on the track, his admission that he neither saw nor heard the approaching train, and that he did not look to see if anything was approaching, although it was in broad daylight, was such gross contributory negligence as would defeat any recovery in case of a responsible adult; but that, inasmuch as less discretion and intelligence were required from a child than an adult, the degree of care and caution was dependent upon the child's age, intelligence, and experience, and was a question for submission to the jury. The case of Adams v. Railway Co.,

52 U. S. App. 433, 28 C. C. A. 494, and 84 Fed. 596, fully sustains this doctrine.

Decisions of the supreme court of Tennessee are much relied on by the plaintiff in error. We shall not attempt now to review these cases. It is sufficient to say that, when those cases are read in the light of their own facts, they will be found to be consistent with the decisions of this court, and with the weight of authority generally.

Railroad Co. v. Dies, 98 Tenn. 655, 41 S. W. 860, was a case much considered on the original hearing and rehearing, and may be regarded as the latest utterance of that court upon the subject now in question. The material facts were that a negro woman 20 or 25 years old and a boy 12 years old were killed by a road engine and tender at the intersection of Kentucky avenue and Carolina street, in the city of Memphis. They came down the street to the avenue crossing about 9 o'clock p. m. A freight train was crossing, and they stopped, and waited for it to clear the crossing, and then, while attempting to pass over, were struck and killed by the engine backing in an opposite direction on a parallel track. The tracks were six or eight feet apart. There was no light upon the tender as it proceeded backward, and the testimony was conflicting as to the speed of the engine, and as to the light furnished at that place by the city lights. There was no flagman at the crossing, which was a public one, and much used. In discussing the subject of contributory negligence, the court said, upon a careful review of the whole of the evidence, that the defense was not sustained; that the deceased persons passed behind the freight train at a public crossing, and had no means of knowing that an engine was moving in an opposite direction on a parallel track eight feet away; that there was no headlight and no lookout where it would have been of any avail to have a lookout; that there was evidence tending to show that there was no light on the tender where it could be seen, and that the engine was moving without ringing the bell or blowing the whistle.

"In this connection," said Judge Wilkes, speaking for the court, "much stress is laid upon the obligation to stop, look, and listen before going over the track of a railroad. The evidence in this case is that the deceased parties did stop. They were compelled to do so, awaiting the passage of the freight train. These obligations to stop and look and listen must receive a reasonable construction and interpretation. It cannot be required that a person shall always stop, or always look, or always listen, but the requirement is that these precautions shall be so observed as to free the party from all negligence. A party cannot be required, for instance, to stop or listen when, on approaching a crossing, he can see a reasonable distance up and down the track, so as to be certain he runs no risk in crossing. He cannot be required to listen if he is deaf, or the noise of the surroundings is so great as to preclude all possibility of hearing. He cannot be held liable for negligence in failing to look when his view is absolutely cut off, or so obstructed as that he can see nothing until he is entering or has entered on the track. A person cannot be deemed negligent because he fails to stop at each track, when there is a series of parallel tracks so near to each other that he can see as effectually by stopping once, or by not stopping at all, as by making continuous or repeated stops. So, too, it could not be deemed negligence for a traveler to fail to observe any of these precautions in cases where the railroad has a flagman at the crossing, and he gives the signal for crossing in safety; nor where, in other ways, the railroad throws him off his guard by failing to exercise legal requirements, and usual observances, and

ordinary caution, and thus leads him into real danger under an apparent aspect of safety."

Within such distance west of the point of collision in question as a traveler might be expected to be on the lookout, could the backing train have been seen? The only means of seeing was the chance that the flagman on a box car might have been observed over the line of intervening cars. If the bell was ringing at a distance of 20 cars away on a curve, could it have been heard? The sound was necessarily muffled and obstructed by the noise on the crossing and the standing cars. Was the traveler misled by the cut in the cars with the way thereby left open? If, as the evidence tended to show, the custom had been to have the train flagman precede the train, and warn people against crossing, how far may the injured boy have been put off his guard relying upon the absence of the flagman as an assurance of safety? These were all questions for the consideration of the jury in determining whether the boy was chargeable with contributory negligence. It has been adjudged that where a railway company, although under no obligation to station a flagman at a crossing, yet for a long time has done so, travelers have a right to presume, in the absence of the flagman, that the crossing is clear. And so the want of a flagman may be proved for the purpose of showing what degree of care ought to be used in his absence. 2 Shear. & R. Neg. (5th Ed.) 466. And where gates are kept at a crossing by statutory requirement, the fact that the gates are open is equivalent to a notice to the public that the track at that time is safe for crossing, and persons going inside the gates may very well be supposed by the jury to have been influenced by the circumstance that the gates are found open. Railway Co. v. Wanless, L. R. 7 H. L. 12; Blount's Adm'x v. Railway Co., 22 U. S. App. 135, 9 C. C. A. 526, and 61 Fed. 375. And, furthermore, the question of the capacity, intelligence, and experience of the injured boy, and the degree of care and caution required of a child of his age, under the circumstances, was peculiarly within the province of the jury. In the proper disposition of such a question the jury had the advantage afforded by the test of the examination and cross-examination of the boy in open court.

In regard to the suggestion in argument that this was an unusually bright boy, we may say that his testimony, even as read in "cold print," manifests an imperfect appreciation of the import and bearing of the testimony which he was giving on the case. It is entirely wanting in any of that circumspection which characterizes the testimony of a person of full years and discretion. It is true, the boy says that, if he had been looking, he might have seen the train, and, by jumping, have avoided injury, just as the driver; but this, in view of the other evidence, must be understood to mean that this opportunity to see the backing train was only after coming from behind the cars on the track immediately west of the east track, for the weight of the evidence shows that west of that point the view was obstructed. If, after emerging from behind these cars, the boy had seen the backing train, and, being thus suddenly placed in a position of danger, had failed to judge quickly and act instantly like an adult, it would not be insisted for a moment that this would, as matter of

law, constitute negligence. The man himself narrowly escaped, without giving time for a word to save the boy. In view of what is thus said, we conclude that the motion to direct a verdict was properly denied, and the question of contributory negligence rightly submitted.to the jury. We are not to be understood as implying that contributory negligence on the part of a child might not be so clear and indisputable as to become a question of law, and require a peremptory instruction. Sickles v. Ice Co., 153 N. Y. 83, 46 N. E. 1042, and Sewell v. Railroad Co., 171 Mass. 302, 50 N. E. 541, may be referred to as examples of such cases. We are also fully aware of the cases in which it has been adjudged that failure on the part of an adult approaching a railway crossing to look and listen before crossing the track is negligence as matter of law, leaving nothing for the jury to decide. Such, for example, are the cases of Railroad Co. v. Freeman (just decided by the supreme court of the United States) 19 Sup. Ct. 763, and other cases referred to in the opinion.

It remains to inquire whether the other errors assigned are sustainable. One of these related to a part of the court's instruction to the jury, in which he characterized quite frequently the conduct of the boy as "childlike." As the age of the child was not disputed, and all the evidence as to his intelligence and experience was before the jury, and the charge of the court full and correct as to the care and caution required of a child of his intelligence and experience, we do not think there was any error in this regard.

The only other error assigned is on the court's refusal to give in charge 10 of the 13 special instructions submitted by the plaintiff in error. The evident purpose of these requests was to have the court, in different forms of expression and with different degrees of emphasis, give effect to the contention of the plaintiff in error—First, that, with an obstructed view, the failure of the boy to stop and look and listen before driving upon the crossing was contributory negligence as matter of law; and, second, that the failure on the part of the boy to look and listen was such negligence as would defeat a recovery, provided the jury should find that, if he had been looking and listening, he might have seen the flagman on a box car, or the other persons who attempted to stop him, and that in this way the accident might have been avoided. What we have already said disposes of the special charges asked, based on the failure of the boy to stop and look and listen. Among other instructions in the general charge were the following:

"What is first suggested by human experience to persons approaching a railroad crossing? That they should go right along heedlessly and thoughtlessly over it, without doing anything to see what danger there is in it? Certainly not; certainly not. They are required by the law to do whatever a reasonable, prudent person would do under the given circumstances then and there existing, with the knowledge of the fact that there lies before them a railroad track on which trains are passing, according to the facts and circumstances of the situation. If it is a crossing where the railroad trains only pass once or twice in 24 hours, that is one situation. If it lies in a city, and is used for switching purposes with the main tracks of the railroad company, that is another situation. And a person who approaches it must take notice of that situation which lies before him in approaching and attempting to cross a railroad. Now, don't you see these two obligations are corresponding obligations;

that the law requires of both sides that they shall each do that which reasonable and prudent persons should do under the given circumstances of the case, —perfectly fair, and perfectly just, and perfectly impartial in its requirements? It is a great mistake to suppose that a railroad company is to pay damages to everybody who gets hurt. They only have to pay damages to him, who is hurt without any fault on his part. * * * If you believe from the testimony in this case that he had intelligence, and discretion, and capability, and familiarity, and had knowledge enough of that situation that he ought to be charged with the ordinary rule that would apply to other people of doing that which was prudent and careful on this occasion, and that he omitted to do that which was prudent and careful, he could not recover in this case. It is true, this was an open yard, and an open way, and the cars were open, and it is true there were obstructions in the way of these cars and that open way there, without any flagman and without any person there, and was a negligent situation, possibly, if you find it so, on the part of the railroad company. If you charge the railroad company with negligence in that situation, and a man might go along and see it open, and all of that, yet he knew that was the switch yards. He could see with his face and with his eyes there were four tracks there, and that was a place used for that purpose,—switching cars there; and it does seem to me, though it is not binding on you, that an ordinarily prudent and careful man going along there would see and observe that situation, and would look and listen; and, if he said to you upon the witness stand that he didn't look and didn't listen, I would say that is contributory negligence. But the great question in this case is for you to determine whether this is to be attributed to this boy, 10 years old, under the circumstances of this case. I will leave that question with you. If the railroad company was negligent, it is liable, unless you find that this boy was chargeable with negligence, was guilty of negligence, and of such age and discretion that he is responsible for that negligence; and I submit that question for your fair and impartial judgment."

The court gave in charge the thirteenth request, which was in these words:

"If you find that the railroad company was negligent in not guarding this crossing, but you also find that plaintiff was negligent in crossing the tracks, and that his negligence was the direct and proximate cause of the injury, and you find plaintiff was of sufficient age, capacity, and understanding to know the danger incident to crossing railroad tracks and switch yards, and, having such understanding, he was guilty of such negligence in not looking and listening, then you must find for the railroad, though you should find the railroad was also negligent."

The charge of the court in relation to the duty of the boy at the crossing and the issue of contributory negligence was full and correct, although in somewhat general terms. Moreover, the thirteenth request, as we have seen, was given to the jury in the very language in which it was presented. In respect of the care and caution to be required of a child of this boy's age, the court instructed the jury in the very language of the opinion in Railroad Co. v. Gladmon, 15 Wall. 406. The ninth and tenth special charges requested were precisely similar in substance and effect to the thirteenth, which was given, and the court was not required to repeat the instruction. The other special instructions sought to have the court throughout declare the failure to look and listen negligence as matter of law. It is true that in one or more of these the fact of failure to look and listen was coupled with other hypothetical facts, which were left open for the consideration of the jury. So far, however, as the failure to look and listen was a part of the instruction, it was treated as constituting negligence as matter of law. From what we have

already said, it is apparent that we think it was a question of fact under the circumstances of this case for the consideration of the jury. These instructions were properly denied by the court upon the ground pointed out in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Railway Co. v. Farra, 31 U. S. App. 307, 13 C. C. A. 602, and 66 Fed. 496; and again in Railway Co. v. Leak, 163 U. S. 280–288, 16 Sup. Ct. 1020. The instructions are open to the criticism that they sought to single out the fact of failure to look and listen as determining the question of contributory negligence to the exclusion of other facts of equal importance, which it was the duty of the jury to consider. In regard to a similar instruction the court, in Railway Co. v. Leak, 163 U. S. 280–288, 16 Sup. Ct. 1020–1023, said:

"It was not an error to refuse this instruction. It was liable to the objection that it singled out particular circumstances, and omitted all reference to others of importance. In Railway Co. v. Ives, 144 U. S. 408, 433, 12 Sup. Ct. 679, it was said that, 'in determining whether the deceased was guilty of contributory negligence, the jury were bound to consider all the facts and circumstances bearing upon that question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all the others.'"

There was no exception taken or reserved to the general charge upon the subject of contributory negligence to which these special instructions exclusively related. So far as any of these special charges could be regarded as sound,—like the ninth and tenth,—the law had already been correctly declared in the general charge, and again in the thirteenth instruction requested, and the court was not required to repeat substantially the same instruction in a special charge. White v. Van Horn, 159 U. S. 3, 15 Sup. Ct. 1027; Coffin v. U. S., 162 U. S. 664, 16 Sup. Ct. 943; Railroad Co. v. Urlin, 158 U. S. 271, 15 Sup. Ct. 840. Furthermore, to have repeated the same special instruction as often as the court was here asked to do would have given undue emphasis to the plaintiff's contention. Eason v. Railway Co., 2 U. S. App. 272, 2 C. C. A. 549, and 51 Fed. 935. It is not to be doubted that the reiteration of the same instruction upon the same point, as the court was asked to do in this case, would have been misleading and confusing, as calculated to impress the jury with the belief that the case turned on the particular facts singled out, and in this way given prominence. In view of the general charge and the special charge which was given, the refusal to give further instruction in the same line was right. The case in this respect is undistinguishable from Railroad Co. v. Urlin, 158 U. S. 271, 15 Sup. Ct. 840, and Railway Co. v. Leak, 163 U. S. 280, 16 Sup. Ct. 1020. The right to have special instructions given in charge has its well-defined limits, as the above and other cases show. It is suggested, rather than argued, that there was error in the ruling on a single question of evidence. The point is without merit. Upon the whole case we conclude that the judgment of the circuit court was right, and it is affirmed.